**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**TYLER DIVISION**

| | | |
|---|---|---|
| EON CORP. IP HOLDINGS, LLC, | § | |
| | § | |
| Plaintiff, | § | CIVIL ACTION FILE |
| | § | |
| v. | § | No. 6:09-cv-116-LED |
| | § | |
| SENSUS USA INC., ET. AL., | § | |
| | § | |
| Defendants. | § | **JURY TRIAL DEMANDED** |
| | § | |

**SENSUS USA INC.'S MOTION TO COMPEL TESTIMONY UNDER FEDERAL RULE OF CIVIL PROCEDURE 30(b)(6); ALTERNATIVELY, SENSUS USA INC.'S MOTION TO STRIKE EON'S INFRINGEMENT CONTENTIONS**

Pursuant to Federal Rules of Civil Procedure 30(b)(6), 37(a)(3)(C) and 37(a)(3)(B)(ii), Defendant Sensus USA Inc. ("Sensus") moves the Court to compel Plaintiff EON Corp. IP Holdings, LLC ("EON") to produce a 30(b)(6) witness to testify about topics related to its Infringement Contentions ("ICs"). EON's ICs, which are attached hereto as Exhibits A-C, fail to identify a specific theory or theories of infringement for each accused instrumentality and fail to identify any factual basis for accusing certain accused instrumentalities, as required by the local patent rules.[1] As a result, Sensus noticed a 30(b)(6) deposition in an attempt to gain an understanding about EON's infringement theories.[2] EON insists, however, that its ICs are not deficient, and it has refused to produce a 30(b)(6) witness or to otherwise amend its ICs to cure their deficiencies. Rather than comply with its P.R. 3-1 obligations, EON has taken the position that Sensus must provide extensive and expensive discovery about Sensus's accused products,

---

[1] *See* P.R. 3-1(c) (requiring plaintiff to clearly identify each accused instrumentality and to identify "specifically where each element of each asserted claim is found within each Accused Instrumentality").

[2] Sensus's 30(b)(6) notice is attached as Exhibit D to this Motion.

assuming that EON will be able to make out a case for infringement after the fact.

EON's cart-before-the-horse approach to its ICs and discovery is contrary to this Court's patent rules and the Federal Rules of Civil Procedure, and has forced Sensus to seek relief from the Court.[3] Because the ICs have far-reaching impact on the trajectory of the case—including the scope of the very discovery EON seeks from Sensus—Sensus asks the Court to compel EON to provide a Rule 30(b)(6) witness to testify on the topics identified in Sensus's 30(b)(6) notice, which is the simplest and most efficient way for EON to explain its theories of infringement and their factual bases. Alternatively, Sensus asks the Court to strike EON's ICs and direct EON to correct the deficiencies noted herein.

## I. Factual Background

Sensus designs and sells water, gas, and electric meters and related wireless infrastructure equipment to utility companies. More specifically, Sensus's utility meters include a radio that allows the meters to wirelessly send information about a consumer's water, gas, or electricity consumption to base station towers, which forward that information to a utility company. This system, which Sensus markets under the brand name "FlexNet," allows utility companies to wirelessly receive, read, and record electric, water, and gas consumption by consumers.

EON has accused Sensus of infringing two patents, U.S. Patent No. 5,388,101 ('101 Patent) and U.S. Patent No. 5,481,546 ('546 Patent), both of which are directed at two-way interactive communication video networks.[4] On October 9, 2009, EON served its Patent Rule 3-1 Disclosure of Asserted Claims and Infringement Contentions. (Exs. A-C). EON's ICs identify Sensus's "FlexNet" system and several related Sensus products—including, among others,

[3] Related to this motion, Sensus has filed a companion motion for protective order under Fed. R. Civ. P. 26(c), asking the Court to protect Sensus against discovery on its one-way water and gas meters, for the reasons discussed in the motion for protective order.

[4] *See* '101 Patent at abstract; '546 Patent at abstract.

Sensus gas, water, and electric meters—of infringing multiple claims of both patents-in-suit. (Ex. A at 3).

After reviewing EON's P.R. 3-1 disclosures, it was apparent that the ICs had many deficiencies, such as:

- Identifying accused products under P.R. 3-1(b) that are nowhere mentioned in EON's P.R. 3-1(c) claim charts and whose specific features are never identified as relevant to EON's infringement contentions.

- Citing, and yet at the same time ignoring, express statements in Sensus documents about accused product features that directly refute EON's infringement positions.

- Block quoting Sensus documents without tying those quotes to any particular claim limitations or explaining how they even support EON's infringement positions.

- String citing Sensus documents without identifying which parts of the cited documents support EON's infringement positions.

Because of these deficiencies, Sensus is unclear about key and fundamental aspects of EON's infringement contentions. For clarity, Sensus noticed a deposition under Federal Rule of Civil Procedure 30(b)(6). (Ex. D). Rather than produce a 30(b)(6) witness, however, EON objected to Sensus's notice and refused to produce a witness arguing, among other reasons, that Sensus's 30(b)(6) notice requires expert opinion; that its ICs are not deficient; and that the alleged deficiencies with its ICs are properly the subject of claim construction. Sensus disagreed, and the parties held a meet and confer on October 28, 2009, and again on November 16, 2009, in an attempt to resolve these issues, but were unable to reach agreement. (*See* Exs. E, F, G and H).

Throughout the meet-and-confer process, EON's position has been that its ICs are sufficient and, in any event, it is not obligated to testify about its own ICs because doing so would require expert testimony or privileged communications—even though Sensus is entitled to clear infringement contentions from EON under P.R. 3-1. (*See* Exs. E at 1 and H at 3). Sensus

fundamentally disagrees with EON's approach to discovery, and contends that under the Court's patent rules, Sensus is entitled to clear infringement contentions from EON under P.R. 3-1 when those contentions are due. EON cannot force Sensus through the time and expense of producing its confidential information to EON, under the mistaken assumption that EON will be able to make out a case of infringement against Sensus's accused products once that information is provided, as Sensus has told EON throughout the meet and confer process.

## II.   Argument

### A.   The EON ICs Fail to Meet the Requirements of Local Patent Rule 3-1(c)

The local patent rules are intended to "further the goal of full, timely discovery and provide all parties with adequate notice and information with which to litigate their cases, not to create loopholes through which parties may practice litigation by ambush."[5] Plaintiffs are required under the local rules to "set forth specific theories of infringement at the outset of the case, utilizing all publicly available information."[6] "By requiring a plaintiff to formulate, test, and crystallize their infringement contentions early in litigation, 'the case takes a clear path, focusing discovery on building precise final infringement ... and narrowing issues for Markman, summary judgment, trial, and beyond.'"[7] In its P.R. 3-1 disclosures, the plaintiff must "explain how each Accused Product is asserted to infringe each claim limitation."[8]

The EON ICs are deficient in a number of ways. First, EON identifies accused instrumentalities under P.R. 3-1(b) but nowhere mentions many of them in its P.R. 3-1(c) charts and never identifies any specific features as relevant to EON's infringement theories. More

---

[5] *Computer Acceleration Corp. v. Microsoft Corp.*, 503 F. Supp. 2d 819, 822 (E.D. Tex. 2007) (citation omitted).

[6] *Linex Techs, Inc. v. Belkin Int'l, Inc.*, 628 F. Supp. 2d 703, 706 (E.D. Tex. 2008) (citations omitted).

[7] *Realtime Data, LLC v. Packeteer, Inc.*, No. 6:08-CV-144, 2009 WL 2590101, at *2 (E.D. Tex. Aug. 18, 2009) (quoting *Connectel, LLC v. Cisco Sys., Inc.*, 391 F. Supp. 2d 526, 527 (E.D. Tex. 2005)).

[8] *Linex Techs.*, 628 F. Supp. 2d at 709.

specifically, EON's P.R. 3-1(b) disclosures identify "FlexNet" and the following components as "Accused Instrumentalities": FlexNet Gas SmartPoint for Commercial/Industrial Meters, FlexNet Remote Mount Gas SmartPoint Transmitter, FlexNet Residential Gas SmartPoint Transmitter, AR5500 Handheld Device/Programmer, FlexNet Network Portal, Regional Network Interface, Tower Gateway Base Station, Model 510X FlexNet SmartPoint Transmitter, Model 520X FlexNet SmartPoint Transmitter and iCon Residential Meters. (Ex. A at 3).

However, EON's P.R. 3-1(c) claim charts specifically discuss only ***five*** of these eleven "Accused Instrumentalities." Thus, it is totally unclear how EON alleges the other six "Accused Instrumentalities"—FlexNet Gas SmartPoint for Commercial/Industrial Meters, FlexNet Remote Mount Gas SmartPoint Transmitter, FlexNet Residential Gas SmartPoint Transmitter, AR550 Handheld Device/Programmer, Model 510X FlexNet SmartPoint Transmitter, and iCon Residential Meters—satisfy the asserted claims or claim elements. (*See* Exs. B and C).[9] And EON's infringement allegations for the five "Accused Instrumentalities" that are discussed are, at best, cursory and unclear. As for the local patent rules, EON has failed to provide an element-by-element analysis for each accused instrumentality, as required.[10] Topics one, two and four in Sensus's Rule 30(b)(6) Notice cover these deficiencies. (*See* Ex. D at 4-5).

Second, the EON ICs quote, yet ignore, express statements in Sensus documents about features of the accused Sensus products that directly refute EON's infringement allegations. For example, each of the asserted claims require a "two-way interactive video network system."

---

[9] Although EON's claim charts do make passing reference to "Sensus iCon meters," that perfunctory mention—duplicated by cut-and-paste in various places in both charts—in no way discusses how those meters have anything to do with the asserted claims or EON's theory of infringement. *See*, *e.g.*, Ex. B at 18 ("'Patented AMDS Connect wireless network architecture coupled with the latest generation of Sensus iCon meters has already been demonstrated to be a winning combination in several utility operating environments, including some of the most varied and unforgiving terrains in the country,' added Britton Sanderford, President and CEO of AMDS.").

[10] *See* P.R. 3-1(c).

However, Sensus's water and gas meters are only *one-way* devices—and EON's P.R. 3-1(c) claim charts even quote Sensus's documents saying this is the case. (*See*, *e.g.*, Ex. C at 1 ("The [FlexNet] system supports one-way radio frequency (RF) transmission for water and gas meters.")). Yet, by accusing—but not charting—Sensus gas and water meters, EON ignores these statements expressly stating that Sensus's gas and water meters communicate in only one direction (one-way) instead of in two directions (two-way), as required by the asserted claims.

EON's P.R. 3-1(c) claim charts fail to identify *any* factual basis for alleging that the Sensus gas or water meters meet the two-way claim limitations. Indeed, during the meet and confer sessions, EON did not dispute what the Sensus documents expressly say; rather, EON contended that "nothing in [the Sensus] information necessarily indicates that the products do not have 'two-way' capability." (Ex. H at 3). Thus, EON essentially argues that until Sensus proves the gas and water meters are not "two-way," then EON can assume that they are. However, it is EON that must have a factual basis for asserting each claim and accusing each product.[11] Without such a factual basis, EON fails to provide a specific theory of infringement.[12] Topics four and ten in Sensus's Rule 30(b)(6) Notice cover this deficiency (*See* Ex. D at 4, 6).

Third, EON's ICs fail to identify which Sensus product(s) and parts of those products allegedly meet each asserted claim limitation. For example, in its P.R. 3-1(b) disclosure EON confusingly identifies every accused instrumentality, except for the FlexNet system at large, as a

[11] *See View Eng'g, Inc. v. Robotic Vision Sys., Inc.*, 208 F.3d 981, 986 (Fed. Cir. 2000) (holding that there must be a reasonable factual basis for alleging infringement); *Williams Wireless Techs., Inc. v. Research in Motion Corp.*, No. 4:06-CV-305, 2007 WL 1932806, at *1 (E.D. Tex. May 31 2007) (finding pre-suit investigation is required by P.R. 3-1).

[12] EON additionally contends that "simple transmission of control or timing data could meet the 'two-way' claim limitations" but provides no basis for its position. Additionally, EON cites *American Video Graphics, L.P. v. Electronic Arts, Inc.*, 359 F. Supp. 2d 558, 560 (E.D. Tex. 2005) for the proposition that "there is a limit to the detail that can be provided in a P.R. 3-1 contention when much of the pertinent information is non-public." *See* Ex. H at 1-2. While Sensus takes no issue with that general proposition, *American Video Graphics* was a software case where confidential source code needed to be inspected. Unlike that case, the gas and water meters being accused in this case are readily available to the public for inspection.

"subscriber unit" but then fails to identify any Sensus product(s) in its P.R. 3-1(c) charts corresponding to the claimed "subscriber unit" or any other structural claim element. (*See generally* Exs. B and C). Because several of the claims, such as claim 1 of the '101 Patent, require point-to-point communication *between* individual subscriber units, EON must identify which accused Sensus product(s) acts as a subscriber unit in order to provide Sensus with a specific theory of infringement. The same deficiency exists for all the other claim elements as well, such as "network hub switching center," "base station," "reception stations," "central switching station," "satellite station," "receive only terminal," "local remote receiver," "local base station repeater cell means," etc. (*See generally* Exs. B and C). EON merely cuts and pastes from Sensus documents over and over again without any indication as to which Sensus products and parts of those products allegedly meet which claim elements.[13] Thus, rather than merely parrot back the claim language, EON's contentions present an analogous problem by block quoting and parroting back Sensus documents without ever identifying how the portions quoted relate to the claim language or provide notice of Sensus's alleged infringement. Topics one, two, four and ten in Sensus's Rule 30(b)(6) Notice cover these deficiencies. (*See* Ex. D at 4-6).

For several claim elements, EON fails to identify a factual basis for alleging that any accused Sensus product contains or meets the element. For example, a significant number of the asserted claims require that subscriber units be portable or mobile.[14] However, EON's ICs fail to identify a factual basis for alleging that any of the Sensus water, gas, or electric meters (assuming those are "subscriber units") or any other accused Sensus products are portable or

[13] Interestingly, EON argued during the meet-and-confer process that its lengthy infringement contentions (nearly 200 pages) are as particular as possible. (Ex. H at 1). However, it only takes a few minutes of reading to realize how many pages are taken up with repetitious cut-and-paste.

[14] *See, e.g.*, '101 Patent claims 1, 2, 3, 4, 5, 6, 8, 9, 10, 12, 14 &17; '546 Patent claims 1 & 14.

mobile. (*See generally* Exs. B and C). To Sensus, it seems self-evident that its water, gas, and electric meters are not portable and EON fails to explain the basis for its assertion otherwise. Topics three and five in Sensus's Rule 30(b)(6) Notice cover this deficiency. (*See* Ex. D at 4-5).

Another example involves a significant number of the asserted claims that require transmissions by subscriber units at milliwatt or low power.[15] Sensus's documents state that its meters transmit at a power between one and two watts. (*See* Ex. I; Exs. L at 10 and M at 11). When prosecuting U.S. Patent No. 5,737,363, a divisional of the '101 Patent, EON distinguished the prior art Martinez reference by characterizing the Martinez reference as "high power output" and arguing to the examiner that Martinez's maximum or peak power of two watts was "orders of magnitude" greater than the low power output of the claimed invention. (Ex. J at 3-4).[16] EON's ICs fail to identify any basis for its current position—in direct conflict with its position before the PTO—that Sensus meter transmissions between one and two watts are "milliwatt" or "low power" transmissions within the scope of the asserted claims. (*Compare* Exs. B and C *with* Ex. J at 3-4).[17] Topics three and seven in Sensus's Rule 30(b)(6) Notice cover this deficiency.

---

[15] *See, e.g.*, '546 Patent claims 1, 5, 9, 10 & 14; '101 Patent claims 1, 2, 3, 4, 5, 6, 8, 9, 10, 12, 14, 16, 17 & 18.

[16] *See* December 1, 1994 Am. Resp. Office Action in SN 08/240,883 (Ex. J), at 3-4 ("Martinez … specifically describes a subscriber transponder *having a maximum or peak power output of approximately 2 watts*. … The present claimed invention specifically recites … a portable battery operated subscriber unit having a 'maximum power output in the milliwatt range.' The *low power output* of the present invention allows [it] to be portable and battery operated. In addition, the *low power output* of the present invention enables [it] to be used for tasks such as, for example, meter reading, which would rapidly exhaust power sources of *prior art high power output devices.* … Applicant respectfully submits that *the Martinez reference does not disclose a subscriber unit having a maximum power output in the milliwatt range. … [T]he Martinez reference teaches away from the present invention by specifically disclosing a subscriber transponder unit having a maximum or peak power output of approximately 2 watts.* Thus, the Martinez reference has teaches [sic] a subscriber transponder unit with a maximum power output orders of magnitude greater than the maximum power output of the present claimed invention. *By limiting the maximum power output to the milliwatt range*, the present claimed invention increases the lifetime of a battery power source. Thus, the present invention is well suited for functions such as, for example, meter reading … and other applications which become feasible with low battery drain.") (italicized emphasis added; underlined emphasis in original).

[17] EON once again argued that the dearth of publicly-available documents indicating milliwatt or low power transmissions by Sensus products justifies assuming that they do just that. However, it is EON that must have a factual basis for accusing each product of infringement. In the absence of contrary evidence, EON cannot choose to

(continued…)

(*See* Ex. D at 4-5).

One additional example relates to the term "interactive video network," which applies to every asserted claim except one. EON's ICs fail to identify the factual basis for alleging that any accused instrumentality is (or is part of) an interactive video network. Although this element does appear in claim preambles, EON's P.R. 3-1(c) charts contain references to Sensus documents for the preambles; thus, EON must either believe that the preambles contain limiting claim elements or it is merely charting them for completeness. In either case, for EON's infringement theory to be clear and specific, EON must associate each claim element with an accused instrumentality or at least explain which elements it believes not to be limiting. Further, because dependent claims have antecedent basis to the independent claim preamble, such as "network hub switching center" in claims 1 and 2 of the '101 Patent, it is questionable whether a non-limiting preamble is a reasonable interpretation upon which to base infringement allegations.[18] Indeed, in a related case, EON has offered a proposed construction for the term "interactive video network."[19] At best, EONs ICs are inconsistent and unclear with respect to preamble elements and therefore fail to convey a specific theory of infringement. Topics three and eight in Sensus's Rule 30(b)(6) Notice cover these deficiencies. (*See* Ex. D at 4-5).[20]

---

ignore public documents showing that the accused Sensus products do not transmit at milliwatt or low power, nor can it unilaterally disregard its position before the PTO without some legal basis for so doing.

[18] *See View Eng'g*, 208 F.3d at 986 (holding that to bring a claim of infringement, the party asserting the patent must construe the claims and have a reasonable basis for a finding of infringement); *Antonious v. Spalding & Evenflo Cos., Inc.*, 275 F.3d 1066, 1075 (Fed. Cir. 2002) (holding that evidence uncovered during a patent holder's investigation must be sufficient to support a reasonable inference that all accused products infringe); *Rapoport v. Dement*, 254 F.3d 1053, 1059-60 (Fed Cir. 2001) (affirming decision finding preamble limiting due to antecedent basis).

[19] *See* Joint Claim Construction and Prehearing Statement at 2, *EON Corp. IP Holdings, LLC v. Verizon Clinton Center Drive Corp.*, No. 6:08-CV-385 (E.D. Tex. Nov. 23, 2009) (Dkt. No. 252).

[20] Sensus additionally seeks additional information for two other claim terms: (1) a repeater of subscriber information or remote/receive only base stations and (2) satellite and performing satellite communications. *See* Ex. D at 4-5 (topics three, six and nine).

Fourth, EON's ICs are deficient in a couple of general ways. Throughout its contentions, EON string cites to a large number of Sensus documents that allegedly contain "additional information disclosing this claim element," but EON fails to identify which portions of those documents have any bearing on its infringement theories. (*See, e.g.*,, Ex. B at 5 ('101 Patent chart)). Similarly, EON cites extensively from Sensus's patents and explicitly recognizes that "[n]ot all of the material disclosed in these patents may be representative of the FlexNet architecture and data transmission protocols." However, EON fails to identify any basis for assuming that the portions cited from the patent are practiced by the accused products. (*See, e.g.*, Ex. B at 5-6). Topics one, two and ten in Sensus's Rule 30(b)(6) Notice cover these deficiencies. (*See* Ex. D at 4-5).

Collectively, these deficiencies prevent Sensus from understanding EON's theories of infringement and fail to provide Sensus with adequate notice and information with which to prepare and litigate its case.

### B. Sensus Is Legally Entitled to Depose a 30(b)(6) Witness on Relevant Factual Matters

The Supreme Court has repeatedly held that discovery rules "are to be accorded a broad and liberal treatment."[21] The broad scope of Federal Rule of Civil Procedure 26 reflects the purpose of modern discovery to make civil trials "less a game of blindman's buff [sic] and more a fair contest with the basic issues and facts disclosed to the fullest practicable extent."[22]

A party may obtain discovery regarding any non-privileged matter that is relevant to the

---

21 *Herbert v. Lando*, 441 U.S. 153, 177 (1979); *Schlagenhauf v. Holder*, 379 U.S. 104, 114-15 (1964).

22 *United States v. Procter & Gamble Co.*, 356 U.S. 677, 682 (1958); *see also Hickman v. Taylor*, 329 U.S. 495, 500-01 (1947) ("The way is now clear, consistent with recognized privileges, for the parties to obtain the fullest possible knowledge of the issues and facts before trial.").

claim or defense of any other party.[23] "Relevant information need not [even] be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."[24] Due to the broad scope of discovery, "it is exceedingly difficult to demonstrate an appropriate basis for an order barring the taking of a deposition."[25]

Although EON contends otherwise,[26] the deposition noticed by Sensus would not call for expert opinion or invade any privilege because Sensus only seeks to gain further understanding about EON's infringement theories. That is, Sensus merely wishes to understand the meaning of and basis for EON's ICs in order to set the trajectory of the case going forward, as required by the local patent rules.[27] Sensus does not intend to ask questions that call for expert opinion or the divulgence of privileged communications.[28] Sensus is entitled to clear, understandable infringement contentions from EON under P.R. 3-1. EON cannot serve deficient contentions and then hide behind privilege and expert objections to prevent Sensus from legitimate discovery to which it is entitled. This would turn the patent rules and the rules of discovery on their heads, allowing the plaintiff to decide what a defendant is (and is not) entitled to know about the plaintiff's infringement contentions, rather than allowing a defendant to take discovery of those contentions when they are unclear or require further explanation.

---

[23] FED. R. CIV. P. 26(b)(1); *Herbert*, 441 U.S. at 182; *Blackboard, Inc. v. Desire2Learn, Inc.*, No. 9:06-CV-155, 2007 WL 3389968, at *1 (E.D. Tex. Nov. 14, 2007).

[24] FED. R. CIV. P. 26(b)(1).

[25] *Horsewood v. Kids "R" US*, 1998 U.S. Dist. LEXIS 13108, at *15, (D. Kan 1998) (quoting *Naftchi v. New York Univ. Med. Ctr.*, 172 F.R.D. 130, 132 (S.D.N.Y. 1997)).

[26] *See* Ex. E at 1; Ex. H at 3.

[27] *See Connectel*, 391 F. Supp. 2d at 527-28 (striking deficient contentions, finding that plaintiffs "are expected to rigorously analyze all publicly available information" and "must explain with great details their theories of infringement"); *Garmin LTD v. TomTom, Inc.*, No. 2:06-CV-338, 2007 WL 2903843, at *8-9 (E.D. Tex. Oct. 3, 2007) (allowing deposition regarding infringement contentions despite refusing party's assertion that the deposition would cover privileged material, noting that "one party may not unilaterally decide when to withhold discovery").

[28] In any event, the Eastern District of Texas has a discovery hotline designed specifically to address such situations should they arise, and the Federal Rules of Evidence provide additional protection to EON.

Further, although it is easy for EON to call every disagreement with ICs "issues for claim construction," it is EON's burden to interpret the claims, apply them to the accused instrumentalities, and clearly identify its theory or theories of infringement through its P.R. 3-1 disclosures. Sensus is not attempting to argue the merits of any claim interpretation position but rather is asking for clarifications that are necessary in order to understand EON's infringement theories.

**C. A Rule 30(b)(6) Deposition Would Be An Efficient Way to Resolve This Dispute**

In a response letter to the October meet and confer, EON proposed a "compromise" solution whereby Sensus would produce its P.R. 3-4(a) documents early and then allow EON to supplement its contentions "on a rolling basis" thereafter. (*See* Ex. E at 2). This compromise, however, is simply unworkable and illustrates why a deposition is appropriate. First, Sensus must have sufficient notice of EON's infringement theories in order to gather and produce responsive documents. Second, Sensus should not have to incur the substantial time and expense of producing P.R. 3-4(a) documents for "accused products" for which EON has provided no theory of infringement under P.R. 3-1(c).

A deposition covering the topics listed in Sensus's Notice would be an efficient and cost-effective means of resolving this dispute, both for the parties and the Court. Not only would a deposition reduce the number of hours and potentially repetitive Court involvement that might otherwise be necessary to resolve these issues by way of a time-consuming and costly paper exchange, a deposition would also greatly reduce the number of calendar days necessary for Sensus to understand EON's theories of infringement, which will ultimately benefit everyone involved by keeping the case on track with the scheduling order.

## III. Conclusion

Infringement contentions are meant to frame the litigation, focus discovery, and narrow issues for Markman, summary judgment, and trial.[29] The local patent rules realize that the only way that can happen is if infringement contentions are clear by setting forth specific theories of infringement using all publicly-available information.[30] Even though Sensus's products are readily available for purchase and inspection, EON's ICs fail to provide Sensus with adequate notice of what or how the accused Sensus instrumentalities infringe EON's patents.

Therefore, Sensus moves the Court to compel EON to provide a Rule 30(b)(6) witness in accordance with Sensus's Notice, attached as Exhibit D. Should the Court find that a deposition is not appropriate, Sensus alternatively moves the Court to strike EON's ICs and direct EON to provide amended ICs that are fully compliant with P.R. 3-1.

---

[29] *Connectel*, 391 F. Supp. 2d at 527.

[30] *Linex Techs.*, 628 F. Supp. 2d at 706.

December 2, 2009

Respectfully submitted,

/s/ Hilda C. Galvan
Hilda C. Galvan
Lead Attorney
Texas State Bar No. 00787512
Email: hcgalvan@jonesday.com
Keith B. Davis
Texas State Bar No. 24037895
Email: kbdavis@jonesday.com
Lon Outland
Texas State Bar No. 24065857
Email: loutland@jonesday.com
JONES DAY
2727 North Harwood Street
Dallas, TX 75201-1515
Telephone: (214) 220-3939
Facsimile: (214) 969-5100

Krista S. Schwartz
Illinois Bar No. 06238053
Email: ksschwartz@jonesday.com
JONES DAY
77 West Wacker
Chicago, IL 60601-1692
Telephone: (312) 782-3939
Facsimile: (312) 782-8585

ATTORNEYS FOR SENSUS USA INC.

**CERTIFICATE OF SERVICE**

I certify that this document was filed electronically pursuant to Local Rule CV-5(a) on December 2, 2009.  Pursuant to Local Rule CV-5(a)(3)(A), this electronic filing acts to electronically serve all counsel who have consented to electronic service via the Court's CM/ECF system.

/s/ Hilda Galvan

**CERTIFICATE OF CONFERENCE**

Pursuant to Local Rule CV-7(h) and (i), I certify that on November 16, 2009, lead counsel and local counsel for the parties met and conferred by telephone about the subject matter of this motion as required by and in compliance with Local Rule CV-7(h). This motion is opposed. Participants on the November 16th conference included Hilda Galvan (lead and local counsel for Sensus), Russ Meyer (lead counsel for EON), and Deron Dacus (local counsel for EON). Prior to this meet and confer, the parties had previously met and conferred on several occasions by phone and in writing about the subject matter of the motion. On the November 16th meet and confer, the parties discussed their respective positions and disagreements about the issues discussed in the motion, but no agreement could be reached due to a fundamental disagreement about the parties' differing views on whether EON's ICs are sufficient and whether a deposition covering the ICs in light of P.R. 3-1(c) is appropriate. EON's counsel, however, agreed to consider an extension of time to Sensus for providing discovery with respect to the Accused Instrumentalities until the parties could resolve their disputes with respect to the infringement contentions. Nine days later, EON advised Sensus that it stood by its position with respect to the sufficiency of its contentions and its refusal to produce a Rule 30(b)(6) witness. The parties have met and conferred in good faith in an attempt to resolve this issue, but their discussion has conclusively ended in an impasse, requiring resolution by the Court.

/s/ Hilda Galvan
Lead and local counsel for Defendant Sensus USA Inc.