**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**TYLER DIVISION**

| | | |
|---|---|---|
| **EON CORP. IP HOLDINGS, LLC,** | § | |
| | § | |
| **v.** | § | **NO. 6:09-cv-116** |
| | § | |
| **SENSUS USA INC., et al.** | § | |

## REPORT AND RECOMMENDATION OF
## UNITED STATES MAGISTRATE JUDGE

Before the Court are Defendant Sensus USA Inc.'s ("Sensus") first (Doc. No. 140) and second (Doc. No. 160) motions for summary judgment of invalidity for indefiniteness and Defendant Bell Industries, Inc.'s ("Bell") motion for summary judgment of invalidity for indefiniteness (Doc. No. 161).   Plaintiff EON Corp. IP Holdings, LLC ("Plaintiff") filed a response to Sensus's first motion (Doc. No. 148), Sensus replied (Doc. No. 154), and Plaintiff filed a sur-reply (Doc. No. 156). Plaintiff filed a combined response to Sensus's second motion and Bell's motion (Doc. No. 166). Bell filed a reply (Doc. No. 170).[1]   On June 10, 2010, the Court heard argument (Doc. No. 183). Having considered the parties' submission and argument,  the Court **RECOMMENDS** that Bell's motion be **DENIED**.   The Court also **RECOMMENDS** that Sensus's motion be **GRANTED-IN-PART** and **DENIED-IN-PART**.   The Court **RECOMMENDS** finding claim 12 of the '101 Patent and claim 6 of the '546 Patent invalid for being indefinite.   The Court holds in abeyance questions regarding the "Means for Transmitting Messages . . . on Different Carrier Frequencies" and "Means to Receive Messages from Said Subscriber Units" limitations.

## BACKGROUND

---

[1]  For purposes of clarity, the Court will cite the papers as follows: Doc. No. 140 as SENSUS 1ST MOT.; Doc. No. 148 as PL.'S 1ST MOT. RESP.; Doc. No. 154 as SENSUS 1ST MOT. REPLY; Doc No. 156 AS PL.'S 1ST MOT. SUR-REPLY; Doc. No. 160 as SENSUS 2D MOT.; Doc. No. 161 as BELL MOT.; Doc. No. 166 as PL.'S RESP.; and Doc. No. 170 as BELL REPLY.

At issue are U.S. Patent Nos.  5,388,101 ("the '101 Patent") and 5,481,546 ("the '546 Patent").  Plaintiff accuses Bell of literally infringing claims 1, 2, 3, and 5-14 of the '546 Patent and infringing claim 4 of the '546 Patent under the doctrine of equivalents (Doc. No. 157) ("PL.'S MARKMAN BR.").  PL.'S MARKMAN BR. at 2.  Plaintiff also accuses Bell of literally infringing claims 1, 2, 3, 8, 9, and 12-20 of the '101 Patent and infringing claims 4-7, 10, and 11 under the doctrine of equivalents.  *Id.*  Plaintiff accuses Sensus of literally infringing claims 1-3 and 5-14 of the '546 Patent and claims 1-3, 8, 9, 12, and 16-18 of the '101 Patent.  *Id.*  Plaintiff further accuses Sensus of infringing claims 4-6 and 10 of the '101 Patent under the doctrine of equivalents.  *Id.*

As the '546 Patent is a continuation of the '101 Patent, the patents are essentially identical except for the claims themselves.  The patents "relate[] to an interactive two-day data service network for conveying synchronously timed digital messages point to point through the network."  '101 Patent at 1:8-10.  The invention was directed at facilitating long distance communication with subscriber units of maximum effective radiated power under twenty watts on the Federal Communication Commission ("FCC") authorized 218-219 MHz band.  *Id.* at 1:28-35.  The network consists of "portable subscriber units of milliwatt transmitting power capacity," *id.* at 3:35-36, base stations capable of transmitting data to the subscriber units, *id.* at 3:62-65, and "receive only stations" that relay communications from the subscriber units to the base stations.  *Id.* at 3:65-4:2.  The base station 3 is located at the center of a local area territory, delineated by ring 19.  *Id.* at 5:40-47.  Subscriber units x 4, 4', etc are distributed throughout the local area territory.  *Id.* at 5:54-6:4.  As the subscriber units transmit at a lower power than the base station, remote receive-only relay stations 20A-20N are positioned at strategic locations within the territory to relay communications from the subscriber units to the base station.  *Id.*

2

## LEGAL STANDARD

"Summary judgment is appropriate in a patent case, as in other cases, when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Nike Inc. v. Wolverine World Wide, Inc.*, 43 F.3d 644, 646 (Fed. Cir. 1994). *See also* FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986). A "genuine issue" of material fact exists when a fact requires resolution by the trier of fact and a reasonable jury could resolve a factual matter in favor of the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). When ruling on a motion for summary judgment, the Court is required to view all justifiable inferences drawn from the factual record in the light most favorable to the non-moving party. *Id.* at 255.

Patent claims must "particularly point[] out and distinctly claim[] the subject matter" of the invention. 35 U.S.C. § 112. "Because a claim is presumed valid, a claim is indefinite only if the claim is insolubly ambiguous, and no narrowing construction can properly be adopted." *Microprocessor Enhancement Corp. v. Texas Instruments, Inc.*, 520 F.3d 1367, 1374 (Fed. Cir. 2008). "A claim is considered indefinite if it does not reasonably apprise those skilled in the art of its scope." *IPXL Holdings, LLC v. Amazon, Inc.*, 430 F.3d 1377, 1383-84 (Fed. Cir. 2005).

## PARTIES' CONTENTIONS

Sensus contends the following claim terms are indefinite: 1) base station reception means / reception means; 2) network hub switching center means / hub switching center means; 3) digital message organization means; 4) data processing means at the base station; 5) assembling means; 6) means for interlacing 64 subscriber units; 7) means to receive messages from said subscriber units; 8) means for selecting a transmission carrier frequency in a plurality of frequency bands; 9) means

3

for retransmitting; 10) means for transmitting messages . . . on different carrier frequencies; 11) means for compensating.  Bell contends the following claim terms are indefinite: 1) remotely located reception stations; and 2) synchronously related.  The parties' specific argument as to each turn is discussed in more detail below.

**DISCUSSION**

**I. Sensus Terms**

**1. Base station reception means / reception means**

"Base station reception means" appers in claim 1 of the '101 Patent and "reception means" appears in claims 1 and 2 of the '546 Patent.  Claim 1 of the '101 Patent recites "**base station reception means** for receiving and processing data messages from the set of local subscriber units at that base station." '101 Patent at 11:40-42 (emphasis added).  Claim 1 of the '546 Patent recites "**reception means** for receiving and processing data messages from said set of local subscriber units," '546 Patent at 11:8-9 (emphasis added), and claim 2 of the '546 Patent recites "**reception means** for receiving and processing said multiplexed synchronously realted data messages from said at least one of said plurality of subscriber units . . . and relaying said multiplexed synchronously related data messages from said at least one of said plurality of subscriber units to said base station repeater cell means." *Id.* at 11:44-49 (emphasis added).

For the reasons stated in the Court's claim construction opinion and order, these are means-plus-function limitations subject to § 112, ¶ 6.

Claim of the '101 patent recites a "base station reception means" and claims 1 and 2 of the '546 Patent recite "reception means."  The claimed functions all include "processing . . . data messages."  Sensus argues this processing function requires an algorithm that the specification does

not disclose.  SENSUS 1ST MOT. at 7-11.  Relying on *WMS Gaming Inc. v. International Game Technology*, 184 F.3d 1339 (Fed. Cir. 1999), and its progeny, Sensus contends the failure to disclose an algorithm amounts to pure functional claiming and renders the claims indefinite.  *Id.*  Plaintiff argues *WMS Gaming* is inapplicable.  Pl.'s 1st Resp. at 20-22   Plaintiff argues the corresponding structure is not a general purpose computer, but rather a receiver that one of ordinary skill in the art would recognize as capable of performing the claimed processing function.  *Id.* at 21-22.

WMS Gaming is inapplicable to the disputed limitation.  In *WMS Gaming*, the Federal Circuit held  that "[i]n a means-plus-function claim in which the disclosed structure is a computer, or microprocessor, programmed to carry out an algorithm, the disclosed structure is not the general purpose computer, but rather the special purpose computer programmed to perform the disclosed algorithm."  184 F.3d at 1349.  The patents-in-suit do not, however, rely on a computer or microprocessor as structure.  The specification states "a plurality of receive only stations . . . process and relay transmitted digital data."  '101 Patent at 3:65-4:1; *see also* '101 Patent at 6:40-41 (describing remote receiver stations capable of processing subscriber units).  One of ordinary skill in the art would understand a radio receiver to consist of "a radio communication receiver for demodulating radio signals" or a "terminal that includes a detector and signal processing electronics to convert electrical signals to optical or audio signals, or to both of these."  GRAHAM LANGLEY, TELEPHONY'S DICTIONARY 252 (2d ed. 1986).  One of ordinary skill in the art would further understand that signal processing refers to the basic technique of modulating a wave to transmit information. *See* THOMAS LAVERGHERTTA, ANALOG COMMUNICATIONS FOR TECHNOLOGY 1 (1991) (describing basic example of communication system including signal processing); LEON W. COUCH, MODERN COMMUNICATIONS SYSTEMS: PRINCIPLES AND APPLICATIONS 6 (1994) (disclosing basic

communication system wherein a receiver includes a signal processing component).   The specification's description of the remote receivers is consistent with this usage.  *See* '101 Patent at 6:60-63 (explaining data messages are "superimposed by modulation" on an r-f wave for transmission); '101 Patent at 7:5-27 (describing operation of invention using r-f wave).  Thus, as used in the patents-in-suit, one of ordinary skill in the art would not have understood "processing" to reference a radio receiver rather than a computer or microprocessor.  Accordingly, an algorithm is unnecessary.  Moreover, the specification discloses and links adequate structure, the remote receivers, to perform the claimed processing function.

For the foregoing reasons, the reception means limitations are not indefinite.

## 2. Network Hub Switching Center Means / Hub Switching Center Means

For the reasons stated in the Court's claim construction opinion and order, these are not means-plus-function limitations subject to § 112, ¶ 6.  Accordingly, Sensus's contention that the specification does not disclose corresponding structure is moot.

## 3. Digital Message Organization Means

"Digital message organization means" appears in claim 12 of the '101 Patent and claim 6 of the '546 Patent.  Claim 12 of the '101 Patent recites "[t]he base station configuration in claim 1 wherein said local subscriber units comprise **digital message organization means** that disassembles a variable length digital message for transmission on a sequence of fixed length transmission frames."  '101 Patent at 12:47-51 (emphasis added).  Claim 6 of the '546 Patent recites "said plurality of subscriber units are further comprised of:  **digital message organization means** for disassembling said multiplexed synchronously related data messages of variable lengths and for

transmitting data in a sequence of fixed length transmission frames." '546 Patent at 12:7-10 (emphasis added).

The parties agree this is a means-plus-function limitation. Sensus argues the specification lacks structure to perform the "disassembling" function. SENSUS 2D MOT. at 3. The claimed function is essentially "disassembling data messages for transmission." The means are part of the subscriber units. In its claim construction briefing, Plaintiff states the specification depicts in Figure 9A transceiver 50, software control data processor 54, input register 51, and output register 52 working together to disassemble and transmit messages. PL.'S MARKMAN BR. at 16. Plaintiff proposes transceiver 50 as the corresponding structure. *Id.* Sensus argues the specification does not clearly link any structure to the disassembling function. SENSUS MARKMAN RESP. at 18. Sensus also contends transceiver 50 is only capable of permitting two-way wireless communications. *Id.* Plaintiff states Sensus's interpretation is flawed because it focuses on the explicit use of the word "disassemble" rather than on the understanding of one of ordinary skill in the art. PL.'S MARKMAN REPLY at 8. Plaintiff contends one of ordinary skill would recognize the specification's disclosure of disassembly and appreciate it is linked to the subscriber unit's function. *Id.* at 8-9.

The specification fails to disclose structure clearly linked to the performance of the claimed functions. Plaintiff accurately observes that the specification discusses a "typical message protocol . . . for fixed frame message lengths." '101 Patent at 7:28-29. The specification also discusses "cell site transmission system 40 thus processes a set of packets in the manner shown in FIG. 5 to accumulate subscriber messages of variable length in a set of serial transmissions for transmitting to the satellite at higher transmission frequency." *Id.* at 7:60-64. Element 40, which does not appear in Figure 5 but appears in Figure 2, is the base station transceiver for communicating with the

satellite system.  Element 40, unlike the present means, is not a part of the local subscriber units. Figure 9 depicts the components of a subscriber unit but the specification does not clearly link any of those components to the disassembly function.  Plaintiff suggests transceiver 50, perhaps in conjunction with the software control data processor 54, performs the disassembly function, but nothing in the specification links either component to the function.  Moreover, while one of ordinary skill in the art would understand the structure of transceiver 50 and the functions it typically performs, one of ordinary skill in the art would not understand transceiver 50 to perform the complicated disassembly process, particularly in the absence of any language clearly linking that element to the disassembly function.

Section 112, ¶ 6 "represents a quid pro quo by permitting inventors to use a generic means expression for a claim limitation provided that the specification indicates what structure(s) constitute(s) the means." *Atmel Corp. v. Info. Storage Devices, Inc.*, 198 F.3d 1374, 1381 (Fed. Cir. 1999).  "Therefore, if one employs means-plus-function language in a claim, one must set forth in the specification an adequate disclosure showing what is meant by that language. If an applicant fails to set forth an adequate disclosure, the applicant has in effect failed to particularly point out and distinctly claim the invention as required by the second paragraph of section 112." *In re Donaldson Co.*, 16 F.3d 1189, 1195 (Fed. Cir. 1994) (en banc); *see also Cardiac Pacemakers, Inc. v. St. Jude Med., Inc.*, 296 F.3d 1106, 1114 (Fed. Cir. 2002) (stating that where a specification fails to disclose corresponding structure " the claim is invalid for failure to satisfy the definiteness requirement of § 112, ¶ 2").  The specification does not set forth clearly linked structure for performing the disassembly function in the subscriber unit.  Therefore, these limitations are indefinite and their

claims invalid.  Accordingly, the Court recommends claim 12 of the '101 Patent and claim 6 of the '546 Patent be found invalid.

### 4. Data Processing Means at the Base Station

"Data processing means at the base station" appears in claims 16-18 of the '101 Patent. Claim 16, which is representative, recites "**data processing means at the base station** for assembling and re-transmitting digital subscriber messages from the subscriber units via the satellite to the central station." '101 Patent at 13:21-24 (emphasis added).

The parties agree this is a means-plus-function limitation.  Sensus argues the specification fails to disclose adequate structure for the "assembling function." SENSUS 2D MOT. at 3.  Although figure 5 discloses "assemble 43," Sensus contends this black-box disclosure is insufficient.  *Id.* Plaintiff argues corresponding structure is found in Figures 1, 2, and 5.  PL.'S MARKMAN BR. at 19.

The corresponding structure includes the transmitters 1A, 3A, and 2F from Figure 1 and 40 from Figure 2.  *See* '101 Patent at 5:47-50 (stating "local base station repeater cell 3 communicates with the satellite system via directed dish antenna 3A").  The specification describes the process of assembling messages with reference to Figure 5:

> The cell site transmission system 40 thus processes a set of packets in the manner shown in FIG. 5 to accumulate subscriber messages of variable length in a set of serial transmissions for transmitting to the satellite at higher transmission frequency.  Accordingly packet builders 41, 41A, etc. are individually assigned to a responding one of simultaneously active subscribers until the subscriber's variable length message of n 240 bit frames is completed, and after pricing 42 the messages are accumulated 43, synchronously timed 45 and transmitted to the satellite 44.

*Id.* at 7:60-8:2.  One of ordinary skill in the art would understand the packet building, pricing, accumulating, and synchronizing structures of Figure 5 to reference a packet builder or packetiser,

a device well-known in the art. *See* RAYMON STEELE, MOBILE RADIO COMMUNICATIONS 68-69

(1992); *see also Lighting World, Inc. v. Birchwood Lighting, Inc.*, 382 F.3d 1354, 1359-60 (Fed. Cir.

2004) (stating "it is sufficient if the claim term is used in common parlance or by persons of skill in

the pertinent art to designate structure"); *S3 Inc. v. NVIDIA Corp.*, 259 F.3d 1364, 1371 (Fed. Cir.

2001) (stating "patent documents need not include subject matter that is known in the field of the

invention and is in the prior art").

Thus, transmitters 1A, 3A, 2F (Fig. 1), 40 (Fig. 2); Packet Builders 41-41A, Price Packets

42, Assemble 43, Time 45, and VSAT 44 (Fig. 55), are clearly linked structure capable of

performing the claimed structure. *See also Telcordia Tech. v. Cisco Sys.*, - - - F.3d - - - , Nos. 2009-

1175, 2009-1184, 2010 WL 2653251, at *10 (Fed. Cir. July 6, 2010) (finding black box disclosure

adequate where defendant fails to prove an ordinary artisan would not understand the disclosure).

Therefore, the limitation is not indefinite.

**5. Assembling Means**

"Assembling means" appears in claim 5 of the '101 Patent. Claim 5 recites "**assembling**

**means** for accumulating the messages from said n cell sites and transmitting the accumulated

messages over said transmission means at a message data bit capacity of n times 2.560 kbaud." '101

Patent at 12:16-20 (emphasis added).

The parties agree this is a means-plus-function limitation. The claimed function is similar

to the function performed by the "data processing means at the base station." Sensus argues this

limitation is also indefinite for lacking corresponding structure that accumulates messages. SENSUS

2D MOT. at 3; SENSUS MARKMAN RESP. at 22. As noted above, Figure 5 discloses structure for

performing the accumulation of messages. The structure of the assembling means differs from the

data processing function because it does not include transmission to the central station.   Thus, transmitters 1A and 2F (Fig. 1) are unnecessary.  Otherwise, the function and corresponding structure are the same as that which was identified for the data processing limitation.   Accordingly, for the same reasons as discussed for data processing, this limitation is not indefinite.

### 6. Means for Interlacing 64 Subscriber Units

"Means for interlacing 64 subscriber units" appears in claim 6 of the '101 Patent.  Claim 6 recites "**means for interlacing 64 subscriber units** for transmitting simultaneously multiplexed messages at said base station."  '101 Patent at 12:21-24 (emphasis added).

The parties agree this is a means-plus function limitation.  Plaintiff argues the specification describes interlacing subscriber units by first choosing a particular transmission frequency with frequency control 57 and then packetizing the receives messages with packet builders 41 and 41A. PL.'S MARKMAN BR. at 25-26.  Sensus counters that the specification does not clearly link those structures to the interlacing function.  SENSUS MARKMAN RESP. at 22-23.   Plaintiff responds that one of ordinary skill in the art would recognize those structures were linked to the claimed function because the stated goal of the claimed function is the same as result described in the specification's discussion of those components. PL.'S MARKMAN REPLY at 19-22.

The specification links structure to the claimed function.  The claimed function is "interlacing 64 subscriber units for transmitting simultaneously multiplexed messages at said base station." '101 Patent at 12:23-25.  The specification discusses such simultaneous transmission:

> A further substantial advantage to the invention is the ability to handle point-to-point connections nationwide under peak traffic conditions with very little subscriber waiting time access to the system.  The system protocol for reception of messages and response at the subscriber units in the chart form of FIG. 3 illustrates the large

> number, typically 640, of subscribers X that can be simultaneously
> using the system at any cell site 5.  With reference again to FIG. 2,
> thus assume that each of ten fixed remote receiver stations 20A-20n
> within the cell area (19) is capable of processing 64 on-air subscriber
> units X
> .

*Id.* at 6:31-42.  Messages from individual subscriber units are received at a particular remote receiver by selecting a specific transmission frequency.  *See id.* at 8:27-42 (discussing procedure for selecting best transmission frequency).  Messages are then forwarded from the receivers to the base station packetized and assembled for serial transmission to the satellite and on to their ultimate destination.  *See id.* at 7:56-8:7.  This arrangement allows the base station to transmit "simultaneously multiplexed messages."  Although the specification does not explicitly refer to this process as "interlacing," one of ordinary skill would recognize the relationship between the purpose of the claimed function and the specification's discussion of facilitating point-to-point connections under peak traffic conditions.  The structure for accomplishing this function, the frequency control 57 and the components depicted in Figure 5, are disclosed by the specification and clearly linked to the claimed function.  Accordingly, this limitation is not indefinite.

## 7. Means to Receive Messages from Said Subscriber Units

The Court will address this limitation in a later report and recommendation.

## 8. Means for Selecting a Transmission Carrier Frequency in a Plurality of the Frequency Bands

"Means for selecting a transmission carrier frequency in a plurality of the frequency bands" appears in claim 18 of the '101 Patent.  Claim 18 recites "the subscriber units having **means for selecting a transmission carrier frequency in a plurality of the frequency bands**."  '101 Patent at 26-28 (emphasis added).

The parties agree this is a means-plus-function limitation.  PL.'S MOT. at 21; SENSUS RESP. at 24; BELL RESP. at 11.  The parties agree the function is "selecting a transmission carrier frequency," with Sensus further adding "in a plurality of the frequency bands."  PL.'S MOT. at 21; SENSUS RESP. at 24; BELL RESP. at 11.  Plaintiff and Bell agree the corresponding structure is control 57 in Figure 9A and the algorithm for selecting frequency disclosed in Figure 6B and in the '101 Patent at 8:8-62.  PL.'S MOT. at 21-22; BELL RESP. at 11-12.

The specification discloses the process of a subscriber unit selecting a transmission carrier frequency.  *See* '101 Patent at 8:8-62 (discussing Figure 6B).  Frequency control section 57 is clearly linked to this process of "set[ting] the transmission carrier frequence during set up procedures."  *Id.* at 10:28-30.  Even without this detailed explanation of the frequency control unit, one of ordinary skill in the art would have understood the necessary structure based on its disclosure in Figure 9. *See S3 Inc.*, 259 F.3d at 1371 (an applicant need not "include a technical treatise for the unskilled reader" when disclosing elements widely known in the art).  Accordingly, the Court defines the function as "selecting a transmission carrier frequency in a plurality of the frequency bands" and identifies the corresponding structure as "Frequency Control 57 (Fig. 9) operating as described in '101 Patent 8:8-62, 10:28-30, and statutory equivalents."

## 9. Means for Retransmitting

For the reasons stated in the Court's claim construction opinion and order, this is not means-plus-function limitation subject to § 112, ¶ 6.  Accordingly, Sensus's contention that the specification does not disclose corresponding structure is moot.

## 10. Means for Transmitting Messages . . . on Different Carrier Frequencies

The Court will address this limitation in a later report and recommendation.

**11. Means for Compensating**

"Means for compensating" appears in claim 9 of the '101 Patent and claim 13 of the '546 Patent.  Claim 9 of the '101 Patent recites "**means** in said base unit **for compensating** for the time of propagation of messages between the different individual subscriber units and the base station data processing facilities." '101 Patent at 12:33-36 (emphasis added).  Claim 13 of the '546 Patent recites "**means for compensating** for the time of propagation of said multiplexed synchronously related data messages between said subscriber units and said data processing means of said base station repeater cell means." '546 Patent at 13:8-11 (emphasis added).

This is presumably a means-plus-function limitation and the claim language does not recite any structure for rebutting the presumption.  The claimed function, "compensating for the time of propagation of said multiplexed synchronously related data messages between said subscriber units and said data processing means of said base station repeater cell means," refers to compensating for the time it takes a signal to travel from one place to another.  This specification depicts this problem in Figure 7A and observes "[f]or keeping the message bits accurately synchronized within the system, the delays in transit time of r-f transmissions must be accounted for." '101 Patent at 9:46-49.  The specification goes on to illustrate a solution in Figure 7B.  Figure 7B depicts "guard bands" separating transmission frames by some amount of time.  *See id.* at 9:51-66.  The specification explicitly states this feature solves the transmission delay problem and negates the need for other corrective measures.  *Id.*  Plaintiff also advocates including in the corresponding structure the guard bands depicted in Figure 8A.  Those guard bands, however, provide buffer between transmission frequencies and do not compensate for transmission propagation delay.  Therefore, the Court defines the function as "compensating for the time of propagation of said multiplexed synchronously related

14

data messages between said subscriber units and said data processing means of said base station

repeater cell means" and identifies the corresponding structure as "guard bands as depicted in Figure

7B and described at '101 Patent 9:44-66, and statutory equivalents."

## II. Bell Terms

Essentially incorporating the briefing from the Verizon case, Bell argues the claims 1-15 of

the '101 Patent and claims 2-13 of the '546 Patent are indefinite because the terms "remotely located

reception stations" and "synchronously related" are insolubly ambiguous. BELL MOT. at 1. Plaintiff

incorporates its briefing from the Verizon case which addressed the same terms and arguments.

PL.'S RESP. at 1; *see also* PL.'S RESP. at APP. A (Plaintiff's response from the Verizon case).  Bell's

reply also parrots the briefing from the Verizon case.  *See* BELL REPLY.  Although the parties'

briefing does not differ from the briefing in the Verizon case nor raise any new issues, the Court

restates its rationale to complete the record.

## 1. Remotely Located Reception Stations

"Remotely located reception stations" appears in claim 1 of the '101 patent.  Claims 2-15

depend from claim 1.  Claim 1 reads in relevant part:

> A base station configuration . . . comprising in combination,
> base station data processing and transmission facilities for
> transmitting to a set of local subscriber units and receiving from a
> subset of those local subscriber units multiplexed messages of
> variable lengths for point-to-point communication between individual
> subscriber units with **remotely located reception stations**,
> base station reception means for receiving and processing data
> messages from the set of local subscriber units . . . .

'101 Patent at 11:20-42 (emphasis added).

Bell contends claims 1-15 of the '101 Patent are invalid as indefinite because the term

"remotely located reception stations" lacks antecedent basis, BELL MOT. at 8-9, is unsupported by the specification, *id.* at 9, and creates a logical inconsistency. *Id.* at 10-13. Plaintiff contends the specification adequately supports the term and provides numerous antecedent bases it. PL.'S VERIZON RESP.[2] at 3-5. Plaintiff further argues Bell's logical inconsistency claim is based on a misreading of the claim. *Id.* at 6-8.

"[T]erms and phrases used in the claims must find clear support or antecedent basis in the description so that the meaning of the terms in the claims may be ascertainable by reference to the description." 37 C.F.R. 1.75(d)(1). "When the meaning of the claim would reasonably be understood by persons of ordinary skill when read in light of the specification, the claim is not subject to invalidity upon departure from the protocol of 'antecedent basis.'" *Energizer Holdings, Inc. v. Int'l Trade Comm'n*, 435 F.3d 1366, 1370 (Fed. Cir. 2006); *see also* MPEP § 2173.05(e) (stating "the failure to provide explicit antecedent basis for terms does not always render a claim indefinite").

Plaintiff identifies references in the written description to "local remote receive stations," '101 Patent at 9:36, "a plurality of receive only stations," *id.* at 3:65, "a gridwork fo receiver sub-cell sites," *id.* at 4:3, and "remote receiver terminals." *Id.* at 5:54-57. Plaintiff then characterizes claim 1 as reciting "'base station data processing and transmission facilities' [that] transmit and receive data messages with 'remotely located reception states.'" PL.'S VERIZON RESP. at 4. Bell contends this is an inaccurate assessment of the claim language. BELL REPLY. at 3. Instead, Bell argues the claim describes transmitting to a set of subscriber units and receiving from a subset of those units.

---

[2] PL.'S VERIZON RESP. refers to Doc. No. 280 filed in *EON Corp. IP Holdings v. Verizon Clinton Center Drive Corp.*, Case No. 6:08-cv-385 (E.D. Tex.).

*Id.*  Bell argues the claim further requires "point-to-point communication" between individual subscribers and "some indefinite 'remotely location reception stations.'" *Id.*

Plaintiff argues the specification discloses embodiments in accord with its characterization of the claiming. PL.'S VERIZON RESP. at 4-5 (citing '101 Patent at 3:62-4:4 (describing an embodiment where "[a] plurality of receive only stations" receive "digital data from subscriber units"); '101 Patent at 5:54-63 (describing an embodiment where "remote, receiver-only, fixed-location relay station" communicate with subscriber units)).  Bell contends Plaintiff's citations to the specification support the next element, the "cell subdivision sites" comprising the "base station reception means." BELL REPLY at 3-4.  Bell further contends the specification is devoid of support for reception stations.  *Id.*

Finally, Bell argues construing "remotely located reception stations" as "Remote Receivers 20-20A" or "Local Area Repeater 3" creates a logical inconsistency because the specification does not disclose two-way communication between those components BELL MOT. at 11-12.  Plaintiff states this argument is based on a flawed reading of the claim. PL.'S VERIZON RESP. at 6-7.  Under Plaintiff's reading, *id.*, the base station facilities "receiv[e] . . digital data messages . . . with remotely located reception stations." '101 Patent at 11:33-48.

Claim 1 of the '101 Patent is not insolubly ambiguous.  The claim language is clear in not requiring "point-to-point communications" between individual subscriber units and the "remotely located reception stations."   '101 Patent at 11:38-39 (reciting point-to-point communications between subscribers).  Thus, the specification's disclosure of one-way communications between the remote receivers and the local area repeater is of no consequence.  The specification describes repeater cells receiving messages from subscriber units by way of remote receiver, which are either

dispersed through the base station geographic area or collocated at the repeater site.  *See, e.g.,* '101

Patent at 5:54-66.  The use of these reception stations is a key aspect of the invention, as it allows

transmission from the low-power subscriber units to the repeater cell.  *Id.* at 5:66-6:04.  In this

context, the specification provides clear support for the term.  That the exact phrase "remotely

located reception station" does not appear elsewhere in the patent does not introduce ambiguity,

particularly given the wide variety of terms employed by the written description to identify these

receivers.  Finally, again in light of the specification's varied use of terms to describe components

of the invention, it is unsurprising that the claim language uses both "remotely located reception

stations" and "cell subdivision site" to refer to Remote Receivers 20-20A.  Read as a whole, the use

of two terms to refer to the same object does not render the claims insolubly ambiguous.  *Cf.*

*Nystrom v. TREX Co., Inc.*, 424 F.3d 1136, 1143 (Fed. Cir. 2005) (holding "[d]ifferent terms or

phrases in separate claims may be construed to cover the same subject matter where the written

description and prosecution history indicate that such a reading of the terms or phrases is proper").

Accordingly, the claims of the '101 Patent are not indefinite..

## 2. Synchronously Related

"Synchronously related" appears in claims 1-15 of the '101 Patent and Claims 1-14 of the

'546 Patent.  Bell challenges the definiteness of the term in claims 2-13 of the '546 Patent.  Claim

2 is an independent claim and claims 3-13 depends from it.  Claim 2 recites in relevant part:

> data processing and transmission means for transmitting to
> and receiving from at least one of said plurality of said subscriber
> units multiplexed **synchronously related** data messages of variable
> lengths such that point-to-point communication between said base
> station repeater cell means and said at least oen of said plurality of
> subscriber units is possible,
>   reception means for receiving and processing said multiplexed

> **synchronously related** data messages from said at least one of said plurality of subscriber units and relaying said multiplexed **synchronously related** data messages from said at least one of said plurality of subscriber units to said base station repeater cell means.

'546 Patent at 11:37-49 (emphasis added).

Bell contends claims 2-13 of the '546 Patent are invalid as indefinite for failing to clearly identify what the term "synchronously related" relates to.  BELL MOT. at 13.  Defendant contrasts the use of the term in claims 2-13 with its use in claims 1 and 14 of the same patent.  *Id.* at 13-14.  Claim 1 recites the "digital data signals of variable lengths [are] synchronously related to a base station broadcast signal."  '546 Patent at 11:23-25.  Claim 14 recites "said transmissions of said subscriber units to said receive only digital receivers synchronously related to said digital messages transmitted by said cell site digital transmitter."  *Id.* at 14:11-14.  Claim 2, however, states only "multiplexed synchronously related data messages."  *Id.* at 11:39-40, 44-45, 47-48.  Thus, Bell argues, although one of ordinary skill in the art would understand what was "synchronously related" in claims 1 and 14, it is not clear what the data messages of claim 2 are synchronously related to.  BELL MOT. at 13-14.  Bell argues the specification offers numerous examples of reference points for synchronization and the claim fails to limit itself to a discrete set of possibilities.  *Id.* at 14-15.

Plaintiff argues the claim language plainly indicates the "data messages" are "synchronously related" to each other.  PL.'S VERIZON RESP. at 8-9.  Plaintiff states the specification discloses synchronizing with signal frequency and with system timing.  *Id.* at 9.  Thus, Plaintiff concludes, the data messages of claim 2 "may be synchronously related (related in time or frequency to any of a number of things, including, as the plain language of the claim provides, each other."  *Id.*  Bell argues "[t]his admission alone renders these claims indefinite."  BELL REPLY at 8.  Furthermore, Bell

contends the specification does not support synchronization of data messages to each other absent an additional reference signal.  *Id.* at 8-9.

Claims 2-13 are not insolubly ambiguous.  The plain language of claim 2 indicates the data messages are synchronously related to each other.  '546 Patent at 11:39-40, 44-45, 47-48.  The claim language does not restrict what else the data messages may be synchronously related to.  This is consistent with dependent claim 5, which further requires that the data messages are "synchronously related and timed for multiplexed message transmission with said base station repeater cell means." '546 Patent at 12:1-3.  Accordingly, the scope of the claims 2-13 of the '546 Patent are clear and they are not indefinite.

## CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS** that Bell's motion be **DENIED**.  The Court also **RECOMMENDS** that Sensus's motion be **GRANTED-IN-PART** and **DENIED-IN-PART**.  The Court **RECOMMENDS** finding claim 12 of the '101 Patent and claim 6 of the '546 Patent invalid for being indefinite.

Within fourteen (14) days after receipt of the magistrate judge's report, any party may serve and file written objections to the findings and recommendations contained in the report.  A party's failure to file written objections to the findings, conclusions and recommendations contained in this Report within fourteen days after being served with a copy shall bar that party from *de novo* review by the district judge of those findings, conclusions and recommendations and, except on grounds of plain error, from appellate review of unobjected-to factual findings and legal conclusions accepted and adopted by the district court.  *Douglass v. United States Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).                          **So ORDERED and SIGNED this 11th day of August, 2010.**

JOHN D. LOVE
UNITED STATES MAGISTRATE JUDGE