**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**TYLER DIVISION**

| | | |
|---|---|---|
| EON CORP. HOLDINGS, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 6:09-CV-116 |
| | § | |
| SENSUS USA INC. ET AL., | § | JURY TRIAL REQUESTED |
| | § | |
| Defendants. | § | |
| | § | |

**SENSUS' MOTION TO STRIKE DR. BIMS' SUPPLEMENTAL EXPERT REPORT**

## TABLE OF CONTENTS

Page

BACKGROUND ......................................................................................................... 1

    A.    EON's Infringement Theories Pre-Supplemental Report ...................................... 1

    B.    The Record Evidence Available To Dr. Bims and EON Before Dr. Bims' Report Regarding the Alleged "Digital Data Messages of Variable Length" ........................................................................................................... 2

    C.    Sensus' Summary Judgment Motions for Noninfringement ................................. 4

LEGAL PRINCIPLES ................................................................................................. 5

ARGUMENT ............................................................................................................... 5

    A.    Dr. Bims Supplemental Report Introduces New Theories of Infringement .......... 7

    B.    The Supplemental Report Violates The Court's Rules and Order ...................... 11

    C.    None of the "Good Cause" Factors Favor Allowing Dr. Bims' Supplemental Infringement and EON's New Infringement Theories ................. 12

        1.    EON cannot explain the untimely supplementation ............................... 13

        2.    EON will still have its original infringement theories ............................. 13

        3.    Dr. Bims' supplemental report tremendously prejudices Sensus ............ 14

        4.    A continuance is not available to cure the prejudice ............................... 15

# TABLE OF AUTHORITIES

**Page**

CASES

*Avance v. Kerr-McGee Chem LLC*,
  No. 5:04-CV-209, 2006 WL 348246 (E.D. Tex. Nov. 30, 2006) ...........................................11

*B. Braun Melsungen AG v. Terumo Med. Corp.*,
  _ F. Supp. 2d _, 2010 WL 4438041 (D. Del. Oct. 28, 2010) ...............................................7, 11

*Coles v. Perry*,
  217 F.R.D. 1 (D.D.C. 2003) .................................................................................................12

*Fenner Investments, Ltd. v. Hewlett-Packard Co., et al*,
  No. 6:08-CV-273, 2010 WL 786606 (E.D. Tex. Feb. 26, 2010) ..............................................5

*Fujitsu Ltd. v. NetGear, Inc.*,
  2009 WL 2341810 (W.D. Wis. July 29, 2009) .................................................................8, 11

*Lampe Berger USA, Inc. v. Scentier, Inc.*,
  No. 04-354-C-M2, 2008 WL 3386716 (M.D. La. Aug. 8, 2008) ...........................................11

*Linex Technologies, Inc. v. Belkin Intern., Inc.*,
  628 F. Supp. 2d 703 (E.D. Tex. 2008) ...............................................................................5, 14

*Raytheon Co. v. Indigo Systems Corp.*,
  No. 4:07-CV-109, 2009 WL 413081 (E.D. Tex. Feb. 18, 2009) .....................................11, 15

*Reliance Ins. Co. v. La. Land & Exploration Co.*,
  110 F.3d 253 (5th Cir. 1997) ...............................................................................................11

*Rowe Int'l Corp. v. Ecast, Inc.*,
  586 F. Supp. 2d 924 (N.D. Ill. 2008) ...................................................................................11

*Salgado v. Gen. Motors Corp.*,
  150 F.3d 735 (7th Cir. 1998) ...............................................................................................11

*Sierra Club v. Cedar Point Oil Co.*,
  73 F.3d 546 (5th Cir. 1996) .................................................................................................12

*Solaia Tech. LLC v. ArvinMeritor, Inc.*,
  361 F. Supp. 2d 797 (N.D. Ill. 2005) ...................................................................................12

*Trilogy Commc'ns, Inc. v. Times Fiber Commc'ns, Inc.*,
  109 F.3d 739 (5th Cir. 1997) .................................................................................................6

*Tyco Healthcare Group LP v. Applied Med. Resources Corp.*,
No. 9:06-CV-151, 2009 WL 5842062 (E.D. Tex. Mar. 30, 2009) ...........................................5

Purporting to "supplement" the original report of its expert Dr. Bims,[1] EON has responded to Sensus' motions for summary judgment of noninfringement by presenting an entirely new report from Dr. Bims with  previously undisclosed infringement theories.[2]  These new theories, which lack any support in Dr. Bims' original report, come only *after* Sensus filed its motions for summary judgment of noninfringement, over a month *after* the deadline for serving opening reports, *after* the close of fact discovery, almost *three months after* EON's final infringement contentions, and well *over a year after* EON's P.R. 3-1 infringement contentions were first due.  Not only is Dr. Bims' "supplement" untimely and in violation of multiple Court deadlines, but allowing his multiple, belated infringement theories at this late stage is tremendously prejudicial to Sensus.  EON's ambush-by-expert is a transparent attempt to defeat Sensus' pending summary judgment motions by presenting new infringement theories after laying behind the log.  Indeed, Dr. Bims admitted as much at his deposition, testifying he prepared his "supplemental" report and formed his new infringement theories in the wake of Sensus' summary judgment motions, which EON recognizes are fatal to its case.  Such practices should not be tolerated by this Court and do not meet the good cause standard for supplementation.  The Court should therefore grant this motion to strike the supplemental report.

## BACKGROUND

### A.    EON's Infringement Theories Pre-Supplemental Report

EON first served its infringement contentions over a year ago on October 9, 2009.  EON then supplemented them on January 29, 2010 in response to the Court's January 22, 2010 order in which the Court found that EON's contentions failed to clearly disclose its infringement theories.[3]  Notwithstanding that it prevailed on most claim construction issues, EON amended its infringement contentions a second time on September 10, 2010, purportedly in response to the Court's claim construction rulings.[4]  EON's second supplement presented an entirely new theory

---

[1] Dr. Bims' Opening Infringement Report, served on October 29, 2010, is attached as Exhibit 1.

[2] Dr. Bims' Supplemental Infringement Report, served over a month later on December 6, 2010, is attached as Exhibit 2.

[3] EON's January 29, 2010 Infringement Contentions are attached as Exhibits 3–5.

[4] EON's September 10, 2010 Final Infringement Contentions are attached as Exhibits 6–8.

of infringement and were presumably EON's final contentions.[5]   EON then served a third set of

amended infringement contentions on November 2, 2010, *after* serving Dr. Bims' report,

removing any doubt about EON's view of what its final infringement theories were.[6]

In every version of its infringement contentions, EON unwaveringly asserted that the

accused FlexNet system contained "digital data messages of variable lengths," a limitation

required by every asserted claim except one.   In its last two sets of "final" contentions

(September 9 and November 2), one of which was served *after* it's expert report on infringement,

EON provided its final theory, contending that the "messages of variable length" limitation was

satisfied because "the new FlexNet packet format," also known as the "MPASS NA2W" format,

"includ[es] the ability to support variable length."[7]   Dr. Bims' opening expert report on

infringement, which was served on October 29, did not deviate from this "MPASS NA2W"

frame format theory of infringement.[8]   Dr. Bims repeatedly opined, albeit in conclusory fashion,

that the accused "Sensus AMI Network" had "digital data messages of variable length," citing

Sensus documents describing the NA2W frame format and its "length/timeslot" field.

### B.   The Record Evidence Available To Dr. Bims and EON Before Dr. Bims' Report Regarding the Alleged "Digital Data Messages of Variable Length"

Months before Dr. Bims served his expert opinions and EON served its final

infringement contentions, Sensus had made available and EON had taken discovery on the

NA2W frames that EON contended satisfied the "digital data messages of variable length"

limitation.   On July 7, 2010, Sensus made available to EON its source code for the accused

systems.   EON arranged to inspect the source code on July 22, 2010, cancelled its inspection the

day before, and never rescheduled an inspection.   The source code remained available for EON

and its experts to review through the close of fact discovery.   EON never looked at the source

---

[5] According to Local Patent Rule 3-6, "[e]ach party's 'Infringement Contentions' and 'Invalidity Contentions' shall be deemed to be that party's final contentions" except as required by claim-construction rulings.

[6] EON's November 2, 2010 Infringement Contentions are attached as Exhibit 9.

[7] *E.g.*, EON's September 10, 2010 Final Infringement Contentions—'546 patent claim chart at 17–18 (Ex. 8); EON's November 2, 2010 Infringement Contentions—'546 Patent claim chart at 17. (Ex. 9).

[8] *See* Bims Opening Infringement Report ¶¶ 142, 160, 193, 219, 258, 273 (Ex. 1).

code. That source code indicates that the NA2W frames EON has relied on to make its infringement case is only used by two-way water and gas FlexNet systems, and are not, in fact, variable length data frames, as stated in Sensus' pending summary judgment motions.[9]

On October 14, 2010, before Dr. Bims' report was due, EON deposed Dan Pinney, Sensus' 30(b)(6) witness about the accused water and gas FlexNet systems. During that deposition, to ensure that EON was on notice about the fatal defect with its infringement case, counsel for *Sensus* elicited testimony from Mr. Pinney—its *own* witness—who testified that the MPASS NA2W format is only used by two-way water and gas meters and its frame length cannot vary. In his opening report served over two weeks later, Dr. Bims relied upon this portion of Mr. Pinney's testimony to support his opinion that "Sensus Meters" use the MPASS NA2W format and therefore have digital data messages of variable lengths.[10] Dr. Bims, however, completely ignored Mr. Pinney's testimony that this functionality was limited to two-way water and gas FlexNet systems and that the length of NA2W frames cannot vary.

In his opening report, Dr. Bims also cited other Sensus documents to support his opinions that NA2W frames are "digital data messages of variable length." These documents were limited to the NA2W frame format and describe this format in the context of two-way water and gas FlexNet systems. Further, these documents, which "speak for themselves" according to Dr. Bims at his deposition, plainly state in context that the NA2W frame format is limited to two-way water and gas FlexNet systems, and that these frames have limited functionality including being fixed length and only being sent in one direction—to two-way water and gas meters.[11]

Thus, long before EON served Dr. Bims' opening report, discovery in EON's possession, both documents and testimony, disclosed the defects in EON's contentions that NA2W frames met the limitation of "digital data messages of variable lengths." This discovery showed EON

---

[9] *See* Sensus' Motion for Partial Summary Judgment of Noninfringement for the Accused FlexNet Electric and One-Way Water and Gas Systems, ECF No. 272, and Sensus' Motion for Partial Summary Judgment of NonInfringement on Data Messages of Variable Length, ECF No. 277.

[10] Bims Opening Infringement Report ¶¶ 142, 160, 193, 219, 258, 273 (Ex. 1).

[11] Bims Dep. 218:12–220:20, Dec. 8, 2010 (Ex. 10).

that these frames are not used by electric and one-way water and gas FlexNet systems, and that they literally do not satisfy the "data messages of variable length" limitations.

### C.    Sensus' Summary Judgment Motions for Noninfringement

On November 24, 2010, before the deadline set by the Court for the parties to file case dispositive motions, Sensus filed a motion for partial summary judgment of noninfringement that EON had not presented evidence that electric and one-way water and gas FlexNet systems have "digital data messages of variable lengths."[12]  Sensus explained to the Court that only two-way water and gas FlexNet systems use the NA2W frame format.  On November 29, 2010, Sensus filed a second motion for summary judgment of noninfringement, noting that the NA2W frame format has a fixed length, and also does not meet other claim limitations requiring the "digital data messages of variable length" to be multiplexed, synchronously related, or transmitted to and received from Sensus meters.[13]

Not until after Sensus filed these summary judgment motions did Dr. Bims provide his "supplemental" report.  In that report, Dr. Bims purports to clarify his infringement opinion on NA2W frames.  What Dr. Bims actually does is reverse course on that infringement theory by stating that "frame length or packet length are different concepts from message length described in the patents. . . . The digital message refers to the information transmitted within a frame or packet."[14]  Dr. Bims criticizes Sensus and the rebuttal report of its expert Dr. Wicker, stating, "Dr. Wicker's opinion is based solely on the NA2W frame format" and  "Dr. Wicker and Sensus erroneously equate frame length or packet size in FlexNet with message length in the patents-in-suit."[15]  Dr. Bims does not mention, however, that *this is the very position, and the only position*, that EON and Dr. Bims himself had previously espoused for infringement of the "digital data messages of variable length" claim limitations by NA2W frames.  Dr. Bims then proceeds to add *three new theories* about additional features of the FlexNet systems that now purportedly satisfy

---

[12] ECF No. 272.

[13] ECF No. 277.

[14] Bims Supp. Infringement Report ¶ 2 (Ex. 2).

[15] Bims Supp. Infringement Report ¶ 3 (Ex. 2).

the "messages of variable length" limitation, none of which were previously disclosed in EON's infringement contentions or Dr. Bims' opening expert report.  These new theories include:  (1) compression of meter readings,[16] (2) different-sized over-the-air messages,[17] and (3) different types of FlexNet commands.[18]  Notably, *none* of Dr. Bims' "supplementation" for these three new theories once mentions NA2W frames, and *none* of these new theories is mentioned in *any fashion* in EON's P.R. 3-1 infringement contentions or in Dr. Bim's opening report.

## LEGAL PRINCIPLES

"The purpose of the Local Rules is to further the goal of full, timely discovery and provide all parties with adequate notice and information with which to litigate their cases, not to create supposed loopholes through which parties may practice litigation by ambush."  *Tyco Healthcare Group LP v. Applied Med. Resources Corp.*, No. 9:06-CV-151, 2009 WL 5842062 (E.D. Tex. Mar. 30, 2009) (internal quotations omitted).  Local Patent Rule 3-1 requires the plaintiff to serve its infringement contentions upon the defendant ten days before the Initial Case Management Conference.  P.R. 3-1.  The infringement contentions must "set[] forth particular theories of infringement with sufficient specificity to provide defendants with notice of infringement beyond that which is provided by the mere language of the patents themselves." *Linex Technologies, Inc. v. Belkin Intern., Inc.*, 628 F. Supp. 2d 703, 713 (E.D. Tex. 2008) (quoting *STMicroelectronics, Inc. v. Motorola, Inc.*, 308 F. Supp. 2d 754, 755 (E.D. Tex. 2004)).

Federal Rule of Civil Procedure 26(a)(2)(B) provides that an expert witness must provide a report that contains "a complete statement of all opinions the witness will express."  Fed. R. Civ. P. 26(a)(2)(B)(i).  *See also* Discovery Order ¶ 3.[19]  "A party must make these disclosures at the times and in the sequence that the court orders."  Fed. R. Civ. P. 26(a)(2)(e).  "Expert infringement reports may not introduce theories not previously set forth in infringement contentions."  *Fenner Investments, Ltd. v. Hewlett-Packard Co., et al*, No. 6:08-CV-273, 2010

---

[16] Bims Supp. Infringement Report ¶¶ 6–7 (Ex. 2).

[17] Bims Supp. Infringement Report ¶¶ 8–14 (Ex. 2).

[18] Bims Supp. Infringement Report ¶¶ 15–17 (Ex. 2).

[19] ECF No. 65.

WL 786606 (E.D. Tex. Feb. 26, 2010) (citations omitted).  When presented with a motion to exclude improperly supplemented expert testimony, the Court should consider: "(1) the importance of the excluded testimony, (2) the explanation of the party for its failure to comply with the court's order, (3) the potential prejudice that would arise from allowing the testimony, (4) the availability of a continuance to cure such prejudice." *Trilogy Commc'ns, Inc. v. Times Fiber Commc'ns, Inc.*, 109 F.3d 739, 744 (5th Cir. 1997) (quoting *E.E.O.C. v. General Dynamics Corp.*, 999 F.2d 113, 115 (5th Cir. 1993)).

## ARGUMENT

EON attempts to defeat Sensus' pending summary judgment motions and make an end-run around the Court's Docket Control Order and the local rules by serving Dr. Bims' belated "supplemental" expert report that presents entirely new infringement theories and acts as *de facto* amendment to its infringement contentions.  This Court has given EON ample opportunity to nail down its specific theories of infringement, and EON has taken that opportunity with *four* sets of contentions.  In fact, Sensus previously moved to compel EON to more clearly disclose its infringement theories, a motion the Court found well taken and granted, finding:

> Proper infringement contentions provide a defendant with notice of a plaintiff's infringement theories. . . **This notice focuses discovery and narrows issues for** claim construction, **summary judgment,** and trial.[20]

Finding EON's earlier contentions deficient, the Court stated:

> The purpose of infringement contentions is to provide notice of EON's infringement theories.  *Linex Techs.*, 628 F. Supp. 2d at 706. … **EON must put forward its position as to where it believes particular limitations are met by the accused instrumentalities**.[21]

Certainly, by the time that EON submitted its expert report on infringement, its theories of infringement should have been nailed down. Indeed, it was not until after Sensus filed its summary judgment motions identifying the deficiencies in EON's expert report that EON

---

[20] ECF No. 122, at 4 (emphasis added).

[21] ECF No. 122, at 6 (emphasis added).  The Court further noted that merely block quoting Sensus documents is not sufficient to disclose those theories.  *Id.*  The same is true for Dr. Bims' opening report or any argument by EON that block quotations of Sensus documents in that report, without explanation, provided Sensus with notice that EON had any infringement theory other than its NA2W frame theory for "digital data messages of variable length."

attempted to drastically change its infringement theories under the guise of a "supplemental" report in order to salvage its case.  The local rules and federal rules do not allow EON to do this. *See B. Braun Melsungen AG v. Terumo Med. Corp.*, _ F. Supp. 2d _, 2010 WL 4438041 (D. Del. 2010) ("Parties may not use their obligation to supplement as an excuse to violate the clear terms of a Scheduling Order, unilaterally buying themselves additional time to make disclosures, thereby unduly prejudicing other parties and potentially delaying the progress of a case.").

### A.     Dr. Bims Supplemental Report Introduces New Theories of Infringement.

EON's most recent revision to its infringement contentions, as well as every prior revision, points to only one source of "digital data messages of variable length" in the accused products:  the NA2W frame format.  Indeed, even the version of its infringement contentions served *after* Dr. Bims' original report relies *solely* on this theory, stating for this limitation:[22]

> *digital data messages of variable lengths:*
>
> Digital data messages transmitted from Endpoints can be of variable lengths.
>
> "Variable length packets are accommodated" in the new FlexNet packet format.  SENSUS 286009.
>
> "MPASS NA2W FORMAT – This new frame format is used for all messages destined for an NA2W Endpoint.  It has several differences from the existing FlexNet frame, including the ability to support variable length, a portion of the header (FlexNet ID and Length/Timeslot) which can be decoded and analyzed separately from the rest of the message, and several new fields."  SENSUS00285261.

EON's earlier September 10, 2010 Final Infringement Contentions served after the Court's claim construction order are identical, and leave no doubt that the only accused feature is the NA2W frame format.[23]  Under the Local Patent Rules, EON is prohibited from introducing alternate theories as to which features of the FlexNet system provide the claimed "digital data messages of variable length," particularly at this late stage in the case.[24]

Dr. Bims relied on the same NA2W frame format infringement theory in his opening report.  He quoted from a page in the FlexNet communication protocol specification that describes the NA2W Format, as well as citing to documents and deposition testimony that relate

---

[22] *E.g.*, November 2, 2010 Infringement Contentions—'546 patent claim chart at 17–18 (Ex. 9).

[23] *E.g.*, September 10, 2010 Final Infringement Contentions—'546 patent claim chart at 17–18 (Ex. 8).

[24] *See* Local Patent Rule 3-6.

to the two-way water and gas FlexNet systems.[25]  Thus, consistent with EON's infringement
contentions, Dr. Bims opening report opined that the only feature of the accused FlexNet systems
allegedly satisfying "digital data messages of variable lengths" limitation was NA2W frame
format.

In his "supplemental" report, however, Dr. Bims attempts to introduce new infringement
theories for this limitation.  At his deposition, Dr. Bims candidly admitted he formed his new
supplemental opinions *after* the October 29 deadline for his opening report, *after* Sensus filed its
summary judgment motions at the end of November, and in direct response to those motions.[26]
Indeed, he admitted that after Sensus filed those motions, EON's counsel asked him to prepare
his new "supplemental" report:[27]

> Q.     Is the filing of that summary judgment motion what caused you to submit
> the supplemental report on Monday, providing additional opinions about variable
> length messages, variable length data messages?
>
> A.     Yes.
>
> Q.     Did your lawyers ask for you to prepare a supplemental report, or did you
> say you needed to independently of your lawyers?
>
> A.     I was asked to file a supplemental.

Dr. Bims also admitted that he formed the opinions in that report and drafted the report the first
few days of December only after reviewing Sensus' summary judgment motions.[28]

None of Dr. Bims' new infringement theories are supported by his original expert report,
which Dr. Bims testified and opined contained the complete basis for his infringement opinions

---

[25] Bims Opening Infringement Report ¶¶ 142, 160, 193, 219, 258, 273 (Ex. 1).  The only other document
cited by Dr. Bims is a marketing document that discusses water and gas FlexNet systems, mentioning that
transmissions can contain different numbers of meter readings for redundancy.  *Id.*  This marketing quote was not
disclosed in EON's earlier infringement contentions, and did not provide any notice that Dr. Bims had other
infringement theories—nor could it given that Dr. Bims could not exceed the scope of EON's earlier infringement
contentions.  As a matter of law, Dr. Bims cannot use his conclusory opinions in the first instance in his opening
report as grounds to "supplement" that report:  "[E]ven if the new explanations and opinions are related to the
experts' previously disclosed report[], then the discussion of those issues [in the original report] was not "a detailed
and complete statement of the testimony of the expert[]."  *Fujitsu Ltd. v. NetGear, Inc.*, 2009 WL 2341810, at *2
(W.D. Wis. July 29, 2009).

[26] Bims Dep. 152:8–20; 305:22–308:14 (Ex. 10).

[27] Bims Dep. 152:8–16 (Ex. 10).

[28] Bims Dep. 308:3–308:14 (Ex. 10).

when it was served on October 29, 2010.[29]   For example, Dr. Bims opines in his supplemental report that using data compression to transmit meter readings satisfied the claim limitation of "digital data messages of variable length."[30]   However, the word "compression" and this infringement theory are not mentioned anywhere in Dr. Bims' opening report.[31]   Dr. Bims' second new infringement theory, that the different modulation mechanisms used in FlexNet may create "digital data messages of variable length"[32] is likewise completely absent in Dr. Bims opening report.[33]   Not surprisingly, Dr. Bims' third new theory, that different FlexNet commands having reserved or unused bits are "digital data messages of variable length,"[34] is also not mentioned anywhere in his opening report.[35]   And, as already discussed, none of these infringement theories are disclosed in EON's September 10th Final Infringement Contentions, or even in EON's November 2nd Infringement Contentions, served *after* Dr. Bims' opening report.

It is also evident from his supplemental report that Dr. Bims is not rebutting the opinions of Sensus' expert, Dr. Wicker, on these issues.[36]   On November 22, 2010, Sensus served Dr. Wicker's rebuttal report, which explains, consistent with Sensus' summary judgment motions, that NA2W frames are used only by two-way water and gas FlexNet systems, and even then these frames are not variable length, multiplexed, synchronously related, or transmitted to and from Sensus utility meters as required to infringe the claims.[37]   Dr. Wicker did not opine on any of EON's new infringement theories—because EON and Dr. Bims had not disclosed them.   Dr. Bims *admits* this in his "supplemental" report, criticizing Dr. Wicker for focusing "***solely***" on

---

[29] Bims Dep. 114:16–115:4; 306:3–7 (Ex. 10).

[30] Bims Supp. Infringement Report ¶ 6 (Ex. 2).

[31] Bims Opening Infringement Report ¶¶ 142, 160, 193, 219, 258, 273 (Ex. 1).

[32] Bims Supp. Infringement Report ¶ 8 (Ex. 2).

[33] Bims Opening Infringement Report ¶¶ 142, 160, 193, 219, 258, 273 (Ex. 1).

[34] Bims Supp. Infringement Report ¶ 8 (Ex. 2).

[35] Bims Opening Infringement Report ¶¶ 142, 160, 193, 219, 258, 273 (Ex. 1).

[36] *See* Fed. R. Civ. P. 26(a)(2)(D)(ii).

[37] November 19, 2010 Rebuttal Report of Dr. Wicker at 15–16, 19–20, 31–38 (Ex. 11).

NA2W frames and whether their length can be varied in Dr. Wicker's rebuttal report.[38]  Given

Dr. Bims' admission that Dr. Wicker opined exclusively on NA2W frames, Dr. Bims cannot

have been rebutting Dr. Wicker's opinion when Dr. Bims presented his new infringement

theories in his supplemental report.  Indeed, if Dr. Bims' original report (and EON's earlier

infringement contentions) disclosed other infringement theories for "digital data messages of

variable length," then there would be no need for Dr. Bims to rebut Dr. Wicker at all, and instead

Dr. Bims would be arguing that those other theories are unrebutted by Dr. Wicker.  Instead,

however, EON has attempted to inject new infringement theories under the guise of Dr. Bims'

December 6, 2010 "supplemental" report.

Finally, it is notable that Dr. Bims' "supplemental" report adds twenty-two new

paragraphs and eleven pages of new analysis of the claim limitation "digital data messages of

variable length."[39]  It is readily apparent that these eleven new pages and twenty-two new

paragraphs are not supported by Dr. Bims' opening report on infringement reciting one short

paragraph including a single conclusory sentence about this limitation followed by a few lines of

citations to the NA2W frame format in Sensus documents.[40]  Nor are these eleven  new pages

and twenty-two new paragraphs supported by EON's Final Infringement Contentions, which

similarly make no mention of data compression, modulation, or different FlexNet commands and

do not provide notice of the new analysis in Dr. Bims' "supplemental" report.[41]

### B.      The Supplemental Report Violates The Court's Rules and Order

Allowing EON to add its new infringement theories will reward EON for failing to

disclose its infringement theories in its infringement contentions, while punishing Sensus for

---

[38] Bims Supp. Infringement Report ¶ 2 (Ex. 2) ("To the extent Dr. Wicker contends the FlexNet systems do not transmit and receive 'digital data signals of variable lengths' (or the appropriate claim language), I disagree. First, I note that *Dr. Wicker's opinion is based solely on the NA2W frame format*.  Second, it appears that Dr. Wicker and Sensus erroneously equate frame length or packet size in FlexNet with message length in the patents-in-suit.  For example, in his report, *Dr. Wicker opines that 'there is no ability to vary the length of NA2W data packets or for an NA2W meter to receive or decode an NA2W data packet having a variable length.*  All received messages are a fixed length.' (Wicker Report at 36.)").

[39] *See generally* Bims Supp. Infringement Report (Ex. 2).

[40] Bims Opening Infringement Report ¶¶ 142, 160, 193, 219, 258, 273 (Ex. 1).

[41] *E.g.*, September 10, 2010 Final Infringement Contentions—'546 patent claim chart at 17–18 (Ex. 8).

complying with the rules and allowing EON to violate numerous provisions of the Court's docket control orders and the Federal Rules. Dr. Bims' supplemental report offers *new* opinions, and does not merely supplement his original opinions as a result of "learn[ing] in some material respect the disclosure . . . is incomplete or incorrect." Fed. R. Civ. P. 26(e)(1)(A); *Reliance Ins. Co. v. La. Land & Exploration Co.*, 110 F.3d 253, 257–58 (5th Cir. 1997) (upholding the exclusion of a supplemental expert report with new material).

Indeed, Dr. Bims candidly admitted that he was asked by EON's counsel to prepare his supplemental report to respond to Sensus' summary judgment motions, and stated in his supplemental report that Dr. Wicker's only rebuttal opinions related to NA2W frames, thereby admitting that his supplemental report was presenting completely new infringement theories. "[E]xpert report supplementation is an improper vehicle through which to give 'ineffective litigants a second chance to develop their case.'" *Raytheon Co. v. Indigo Systems Corp.*, No. 4:07-CV-109, 2009 WL 413081 (E.D. Tex. Feb. 18, 2009) (quoting *Reliance*, 110 F.3d at 257–58). Courts agree that parties are not entitled to shore up their case by serving "supplemental" infringement reports with new opinions. *See Trilogy Comm's*, 10 F.3d at 744 (upholding exclusion of supplemental expert report that contained new opinions); *Salgado v. Gen. Motors Corp.*, 150 F.3d 735, 741 (7th Cir. 1998) (affirming exclusion of a supplemental report filed after the expert deadline); *Avance v. Kerr-McGee Chem LLC*, No. 5:04-CV-209, 2006 WL 348246, *7 (E.D. Tex. Nov. 30, 2006) (striking an expert report that added new opinions after the expert report deadline); *B. Braun Melsungen AG*, 2010 WL 4438041 at *9; *Fujitsu Ltd. v. NetGear, Inc.*, No. 0-CV-710, 2009 WL 2341810, *2–3 (W.D. Wis. 2009); *Rowe Int'l Corp. v. Ecast, Inc.*, 586 F. Supp. 2d 924, 934–35 (N.D. Ill. 2008) (striking portions of supplemental expert report containing new information); *Lampe Berger USA, Inc. v. Scentier, Inc.*, No. 04-354-C-M2, 2008 WL 3386716, *3–4 (M.D. La. Aug. 8, 2008) (striking expert opinion based on information already available); *Solaia Tech. LLC v. ArvinMeritor, Inc.*, 361 F. Supp. 2d 797, 807 (N.D. Ill. 2005) (striking new opinions from a "much expanded opinion" for being "prompted solely by ArvinMeritor's summary judgment motion"); *Coles v. Perry*, 217 F.R.D. 1, 3 (D.D.C. 2003)

(striking a supplemental opinion belatedly filed with new information because Rule 26 limits supplementation to newly discovered information).

Dr. Bims did not consider any new evidence or information for his supplemental report.[42] *Sierra Club v. Cedar Point Oil Co.*, 73 F.3d 546, 569 (5th Cir. 1996) (noting that the purpose of the supplemental report is not to extend the deadline for expert disclosures). Dr. Bims never indicated anywhere in his opening report that he lacked sufficient information to form his opinions. Further, every document and citation in Dr. Bims' supplemental report on the "digital data messages of variable length" limitation had been produced by Sensus by July 2010, months before Dr. Bims' opening report was due.[43] The only additional evidence Dr. Bims had supposedly reviewed between his opening report and his supplement was Sensus' motions for summary judgment,[44] and Dr. Bims was adamant at his deposition that he did not need to review other Sensus documents and evidence—including in particular the source code for the accused Sensus FlexNet systems.[45]

### C.    None of the "Good Cause" Factors Favor Allowing Dr. Bims' Supplemental Infringement and EON's New Infringement Theories

Whether the Court analyzes this issue under the rubric of retroactively extending the deadline for opening reports, striking the untimely addition of new opinions, or a request by EON to amend its infringement contentions months after they were first due, the considerations are the same. None of the "good cause" factors favors EON's tacit and belated attempt to amend its infringement contentions and offer new and undisclosed theories of infringement through the late "supplemental" report of Dr. Bims.

---

[42] *See* Fed. R. Civ. P. 26(a)(2)(E) and 26(e)(1).

[43] Dr. Bims' "supplemental" report cites the same FlexNet protocol specification and other Sensus documents cited in his original report and in EON's Final Infringement Contentions to support his opinions on "digital data messages of variable length." Dr. Bims did not identify any new discovery as the basis for supplementing his report; indeed, he was adamant that there was no need to review other discovery, including in particular the Sensus FlexNet source code that had been available for months, because the documents Dr. Bims already cited in his report "speak for themselves." Bims Dep. 218:12–220:20 (Ex. 10).

[44] Bims Dep. 304:4–20 (Ex. 10).

[45] Bims Dep. 19:11–21:24 (Ex. 10).

### 1.     EON cannot explain the untimely supplementation.

Neither EON nor Dr. Bims identify any previously undiscovered information that caused him to suddenly change course with his opinions, or inhibited EON from disclosing its new infringement theories earlier.  Indeed, in advance of its summary judgment motions, *Sensus* took the affirmative step of putting EON on notice about the fatal defects with its infringement theories through Mr. Pinney's testimony that NA2W frames were not used in all of the accused FlexNet products, and that they lacked the functionality required to infringe the claims.[46]  EON has also long had in its possession the very documents and information cited by Dr. Bims in his "supplemental" report including how the FlexNet systems transmit and compress meter readings, modulate messages for transmission, and have different commands.  Sensus also encouraged EON to inspect the source code for the accused FlexNet systems, but EON refused.[47]  And Dr. Bims' opening report nowhere states that he lacked sufficient information to present his infringement opinions, or that he required additional discovery from Sensus—nor was any such discovery provided between Dr. Bims' original and "supplemental" reports.  As such, there is simply no excuse for EON's belated attempt to add its new infringement theories.

### 2.     EON will still have its original infringement theories.

By this motion, Sensus only seeks to strike Dr. Bims' "supplemental" report and to hold EON to the scope of those infringement theories it timely disclosed.  EON is free to present those timely infringement theories and Dr. Bims is free to argue them, including in response to Sensus' motions for summary judgment.  But as this Court's rules and the applicable law states, defects with EON's original infringement theories are not grounds for EON to present entirely new infringement theories.  Otherwise, there would be no purpose or effect for this Court's patent rules requiring early disclosure of infringement theories to focus the case, for the requirement for timely disclosure of expert reports having the expert's complete opinion and basis for that opinion, or for the ability to move for summary judgment in reliance on those infringement theories that have been disclosed by EON and its expert, Dr. Bims.

---

[46] *See* Pinney Dep. 128:6–130:24, Oct. 14, 2010 (Ex. 12).

[47] *See* Oct. 6, 2010 Letter from K. Davis to D. Dennett 3–4 (Ex. 13).

### 3.   Dr. Bims' supplemental report tremendously prejudices Sensus.

As was the case in *Linex Technologies*, the "technology and system claim structure at issue are complex" and "thorough Infringement Contentions will ensure that Defendants will better understand Plaintiff's claims."  *See Linex Techs*, 628 F. Supp.2d at 712.  Sensus has extensively relied on EON's infringement contentions.  First, Sensus has prepared its noninfringement case according to the theories timely disclosed in EON's Final Infringement Contentions and Dr. Bims' opening report, including filing multiple summary judgment motions of noninfringement.  Second, Sensus has taken multiple depositions of EON witnesses, including two of the named inventor, again in reliance on EON's infringement theories and view of the claims.  Third, Sensus' expert Dr. Wicker has long relied on EON's infringement contentions to prepare his analysis and opinions for Sensus and to direct Sensus' discovery efforts.  Fourth, Sensus and Dr. Wicker have searched for prior art and evaluated that art in reliance on EON's infringement theories.  Fifth, fact discovery has now closed, expert depositions are now underway, and trial is less than three months away.  Sixth, EON's new infringement theories, if allowed, raise substantial and nontrivial new claim construction issues on the scope of the asserted claims and meaning of "digital data messages of variable length,"[48] as well as other invalidity issues previously unconsidered by Sensus such as lack of enablement and lack of written description under 35 U.S.C. § 112 ¶ 1.  Finally, Sensus has already spent almost two years, and incurred substantial costs, defending itself against the infringement theories EON has already disclosed.

There is no time at this late stage for a "do over" of each of the above preparations for EON's and Dr. Bims' failure to timely present their new infringement theories.  Sensus should not have to perform new prior art searches, ask its expert to present new invalidity theories, draft and file new summary judgment motions, perform new and supplemental depositions and fact discovery, and otherwise have to address EON's new infringement theories, all of which could

---

[48] In fact, in a red herring attempt to justify the departure of his supplemental report from the theories presented in his original report, Dr. Bims even offers opinions about the construction of claim terms, demonstrating just how significant the changes in his infringement theories in his supplemental report truly are.  *See* Bims Supp. Infringement Report ¶¶ 4–5.

have been asserted long ago.  In particular, these new theories raise entirely new technical issues such as data compression, software instruction design, and radio modulation never before at issue in this case.

The joint pretrial order is due on December 21, 2010 and Sensus' pretrial disclosures are due January 10, 2011, both less than a month away.  Trial is set for March 14, 2010.  Sensus cannot meet these deadlines while at the same time addressing all of the new issues and additional discovery required by the new infringement theories in Dr. Bims' report, including scouring the parties' document productions to identify desired exhibits and re-review depositions to refute EON's new theories.[49]  Indeed, this motion is not likely to be resolved by the Court by then.  All of these problems caused by Dr. Bims' supplemental report impart tremendous prejudice to Sensus.

### 4.       A continuance is not available to cure the prejudice.

Trial is for March 14, 2011, with jury selection on March 7, 2011.  On the Docket Control Order, the Court made a specific notation that both dates are "not flexible without good cause – Motion Required."[50]  In light of the Court's busy docket, with two jury trials in April 2011, four in May 2011, and two in June 2011, it is unlikely that the Court can continue this case easily.  And such a continuance will not cure most of the prejudice arising from Dr. Bims' and EON's belated new infringement theories, including reopening fact discovery and redoing depositions and other discovery, searching for new prior art and formulating new invalidity contentions, having to address new claim construction issues, serving new expert reports, and preparing and serving summary judgment motions.   Sensus is entitled to proceed to jury trial or, due to its pending motions, to summary disposition of this litigation before trial so that it can finally end this litigation.

---

[49] *Cf. Raytheon Co.*, 2009 WL 413081, at *2 (finding no prejudice from supplemental report because the trial date had already been continued, the court had not yet issued a claim construction ruling, and a new trial date had not yet been set).

[50] ECF No. 66, at 1–2.

December 14, 2010

Respectfully submitted,

/s/ Hilda Galvan
Hilda C. Galvan
Lead Attorney
Texas State Bar No. 00787512
Email: hcgalvan@jonesday.com
Keith B. Davis
Texas State Bar No. 24037895
Email: kbdavis@jonesday.com
Lon Outland
Texas State Bar No. 24065857
Email: loutland@jonesday.com
JONES DAY
2727 North Harwood Street
Dallas, TX 75201-1515
Telephone: (214) 220-3939
Facsimile: (214) 969-5100

ATTORNEYS FOR SENSUS USA INC.

## CERTIFICATE OF CONFERENCE

The undersigned hereby certifies that on December 8, 2010, the undersigned conferred with Cabrech Connor, counsel for EON, in a good faith attempt to resolve this matter without court intervention.  Counsel for Sensus explained that Dr. Bims supplemental report did not qualify as a supplement under the Federal or Local Rules and inappropriately contains new theories of infringement never disclosed by EON.  Sensus requested that EON withdraw Dr. Bims supplemental report but EON refused.  Therefore, this motion is opposed.

//s/ Hilda C. Galvan

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was filed via CM/ECF and was served upon all counsel of record via CM/ECF on December 14, 2010.

/s/ Hilda Galvan

## CERTIFICATE OF AUTHORITY TO FILE UNDER SEAL

I hereby certify that pursuant to Local Rule CV-5(a)(7) and Paragraph 25 of the Protective Order [Dkt. No. 202], the Court has granted authorization to seal documents in this case.

/s/ Hilda Galvan

DLI-6335719v1

- 17 -