**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION**

| | | |
|---|---|---|
| EON CORP. HOLDINGS, LLC, | § § | |
| Plaintiff, | § § | CIVIL ACTION NO. 6:09-CV-116 |
| v. | § | JURY TRIAL REQUESTED |
| SENSUS USA INC. ET AL., | § § | |
| Defendants. | § § | |

**SENSUS USA INC.'S REPLY IN SUPPORT OF ITS MOTION FOR PARTIAL
SUMMARY JUDGMENT OF NON-INFRINGEMENT ON DATA MESSAGES OF
VARIABLE LENGTH**

**TABLE OF CONTENTS**

Page

I. Argument ........................................................................................................................... 1

    A. There Are No Genuine Issues of Material Fact That NA2W Frames Are Fixed Length, Are Not Received from Sensus Meters, and Are Not Multiplexed or Synchronously Related as Required by the Claims ....................... 1

    B. No Reasonable Jury Could Find That the NA2W Frame Format Is a "Digital Data Message of Variable Length" That Is Multiplexed, Synchronously Related, and Received from a Sensus Meter ................................ 4

    C. EON's New Infringement Theories Are Untimely and Cannot Prevent Summary Judgment ............................................................................................... 5

II. Conclusion ........................................................................................................................ 7

# **TABLE OF AUTHORITIES**

**Page**

**CASES**

*Anthony v. Chevron USA, Inc.*,
   284 F.3d 578 (5th Cir. 2002) ..................................................................................................5

*AquaTex Indus., Inc. v. Techniche Solutions*,
   479 F.3d 1320 (Fed. Cir. 2007)................................................................................................6

*Centricut, LLC v. Esab Grp., Inc.*,
   390 F.3d 1361 (Fed. Cir. 2004)................................................................................................6

*GTX Corp. v. Kofax Image Prods. Inc.*,
   571 F. Supp. 2d 742 (E.D. Tex. 2008)..................................................................................5, 6

*Invitrogen Corp. v. Clontech Labs., Inc.*,
   429 F.3d 1052 (Fed. Cir. 2005)................................................................................................6

*Nichols Constr. Corp. v. Cessna Aircraft Co.*,
   808 F.2d 340 (5th Cir. 1985) ....................................................................................................5

*PharmaStem Therapeutics, Inc. v. Viacell, Inc.*,
   419 F.3d 1342 (Fed. Cir. 2007)................................................................................................4

EON's "omnibus" response quickly recants EON's original infringement theory that NA2W frames are "digital data messages of variable length." This comes as no surprise, given the numerous shortcomings of that theory described in Sensus' opening motion that warrant summary judgment of noninfringement. Instead, EON places the cart before the horse, retreating to and heavily relying on its untimely, new infringement theories first disclosed in the Bims Supplemental Expert Report served *after* this summary judgment motion, in violation of the Court's rules, discovery deadlines, and hornbook law that bars EON's attempt to manufacture fact issues by untimely expert testimony and undisclosed evidence.[1] Sensus has discussed elsewhere why the Bims Supplemental Expert Report should be stricken, and does not repeat that analysis here.[2] Because EON and Dr. Bims' new infringement theories are inadmissible, and because EON makes no real defense of its NA2W frame infringement theory in its response, summary judgment of non-infringement should be granted.

### I.  ARGUMENT

#### A. THERE ARE NO GENUINE ISSUES OF MATERIAL FACT THAT NA2W FRAMES ARE FIXED LENGTH, ARE NOT RECEIVED FROM SENSUS METERS, AND ARE NOT MULTIPLEXED OR SYNCHRONOUSLY RELATED AS REQUIRED BY THE CLAIMS

Sensus detailed in its opening motion that the asserted claims require "digital data messages of variable length" but that as actually implemented in Sensus' two-way water and gas FlexNet systems and described by its documents, NA2W frames have a fixed length and cannot satisfy this claim limitation. EON now admits NA2W frames are not "digital data messages of variable length" by recently adopting the new position that Sensus has mistakenly confused the fixed-length NA2W frames for a "digital data message of variable length."[3] This bold

---

[1] EON repackages and resubmits the Bims Supplemental Report in declaration form through the Bims Declaration, attached as Ex. QQ to EON's Response, ECF No. 307. For the same reason the Bims Supplemental Report should be stricken, the Bims Declaration should also be stricken.

[2] *See generally* Sensus' Mot. Strike Dr. Bims Supp. Report, ECF No. 292; *see also* Sensus' Reply in Support of Its Motion for Partial Summary Judgment of Noninfringement for the Accused FlexNet Electric and One-way Water and Gas Systems at Part I.C.

[3] EON Resp. 3 ("In both motions, Sensus and its expert, Stephen Wicker, confuse the term 'message' (the content of the transmission) with 'frame format' or 'packet' (the container in which a message is transmitted)."), ECF No. 307.

proclamation is a complete about face by EON, who has contended throughout this litigation—including in its infringement contentions and in Dr. Bims' opening report—that NA2W frames were *the* claimed "digital data messages of variable length."[4] EON makes no effort to explain its earlier, opposite position including Dr. Bims' opening report clearly establishing EON's infringement theory for "digital data messages of variable length" as NA2W frames.

Nonetheless, EON remains reluctant to finalize its divorce from that theory, asserting in its response that an NA2W frame is, in fact, a "message" whose length can vary:

> First, even if two-way gas and water smartpoints started using the NA2W message format sometime in 2009, NA2W messages vary in length.[5]

EON is rightfully concerned that Dr. Bims belated new infringement theories will be excluded, leaving it with only its NA2W frame format infringement theory. In any event, EON does not cite *any support* for this flaccid assertion that NA2W messages vary in length—not even Dr. Bims' opening report.[6] EON also does not dispute that only Dr. Wicker, and not Dr. Bims, has inspected the source code for the two-way water and gas meters and confirmed that, as stated in the FlexNet protocol specification, NA2W frames cannot vary in length. This critical dispositive fact about the length of NA2W frames as *actually implemented* in two-way water and two-way gas FlexNet systems stands unrebutted by both EON and Dr. Bims.

EON's response also fails to identify any genuine issue of material fact that NA2W frames are not received from (*i.e.*, transmitted by) a two-way water or two-way gas meter; multiplexed; or synchronously related. As discussed in Sensus' opening motion, these are additional limitations required by the claims, but the only opinion that Dr. Bims presented in his opening report is that an NA2W frame is a "digital data message of variable length."[7] He did not opine that NA2W frames are both sent to and received from two-way water and gas meters; that

---

[4] *See* Sensus Opening Mot. 4–7, ECF No. 277; *see also* Sensus' Mot. Strike Dr. Bims Supp. Report 1–2, 7–8, ECF No. 292.

[5] EON Resp. 21, ECF No. 307.

[6] EON Resp. 21, ECF No. 307 (failing to cite any Sensus documents, Sensus testimony, or opinions and analysis by Dr. Bims that an NA2W frame is literally a "digital data message of variable length").

[7] Sensus Opening Mot. 5–6, ECF No. 277.

NA2W frames are multiplexed (e.g., as a group command response); or that NA2W frames are synchronously related, all of which must be proven for infringement. EON makes a weak attempt to remedy this in its response, citing certain documents to argue that Sensus and Dr. Wicker have ignored relevant evidence about "group commands"—the allegedly infringing "multiplexing" (and one allegedly-infringing "synchronously related") feature:

> … Sensus contends that no fact issue exists concerning the multiplexing and synchronous relationship of NA2W messages to and from such two-way water- and-gas smartpoints. In substance, this aspect of Sensus's motion is a no-evidence argument and fails because Sensus and its expert Wicker again ignore the FlexNet specifications and other Sensus documents, which detail how such messages are synchronized and multiplexed.[8]

EON cross references documents cited by footnote 104 (mistakenly identified as footnote 105) of its response,[9] contending that the cited documents "establish that FlexNet messages are multiplexed."[10] Tellingly, however, EON does not assert that these documents disclose that ***NA2W frames*** are multiplexed. Although these documents discuss the "group command" feature to some degree, ***none*** of these documents state that NA2W frames are sent in response to a group command.[11] Indeed, at his deposition, Dr. Bims was unable to identify any place where the FlexNet communications protocol specification and other Sensus documents such as those EON cites purport to disclose that NA2W frames are multiplexed group command responses.[12]

Dr. Bims also admitted that the FlexNet communications protocol specification only says that NA2W frames are *transmitted to* an NA2W endpoint (i.e., a two-way water or two-way gas meter), and does not say that NA2W frames are *received from* an NA2W endpoint:

> Q. Okay. Looking at the FlexNet communications protocol specification and the page Bates numbered Sensus 319681, do you see it says mPass NA2W format?
>
> A. Yes.

---

[8] EON Resp. 4, ECF No. 307 (citing footnote 105 [sic: 104]).

[9] EON Resp. n.105. (citing Ex. UU, Ensuring Reliable Coverage: FlexNet Network Portal (FNP); and Ex. TT, December 2, 2010 Sensus-Peco Agreement and April 30, 2010 Sensus-Cobb Electric Agreement.)

[10] EON Resp. 28, ECF No. 307.

[11] EON Resp. 28, ECF No. 307.

[12] Bims Dep. 176:1–178:6; 211:24–215:11; 225:13–229:7 (Ex. 1).

> Q. And then the first sentence says "This new frame format is used for ***all messages destined for an NA2W Endpoint***." Did I read that correctly?
>
> A. Yes.
>
> Q. So that sentence indicates that this is talking about a transmission -- ***a frame used to transmit to an NA2W endpoint***. Correct?
>
> A. Yes.
>
> \* \* \* \* \*
>
> Q. (BY MR. DAVIS) And that page, Sensus 319681, the only statement on that page is that NA2W frames are destined for an NA2W endpoint. Correct?
>
> MS. DENNETT: Objection; form.
>
> Q. (BY MR. DAVIS) As far as the direction of transmission?
>
> A. Yes.
>
> Q. So there's no statement on the page that you cited in your report, 319681, that says that an mPass NA2W format message is received from an NA2W endpoint. Correct?
>
> A. On this line? No.[13]

Dr. Bims and EON cannot simply make up evidence or assume that NA2W frames can be "group command" responses, or that NA2W frames are transmitted by a two-way water or two-way gas meter (contrary to the express statement in the protocol specification), in order to manufacture a genuine issue of material fact.[14]

### B. NO REASONABLE JURY COULD FIND THAT THE NA2W FRAME FORMAT IS A "DIGITAL DATA MESSAGE OF VARIABLE LENGTH" THAT IS MULTIPLEXED, SYNCHRONOUSLY RELATED, AND RECEIVED FROM A SENSUS METER

Under the undisputed material facts, no reasonable jury could find that NA2W frames literally meet the claim limitations requiring multiplexed, synchronously-related "digital data messages of variable length" that are received from (and transmitted to) subscriber units. NA2W

---

[13] Bims Dep. 130:23–131:10; 134:20–135:6 (emphasis added) (Ex. 1). Dr. Bims also testified that this page from the FlexNet communications protocol specification was the only page he had cited from that document to assert an NA2W frame was a "digital data message of variable length." *Id.* at 134:10–17.

[14] *See PharmaStem Therapeutics, Inc. v. Viacell, Inc.*, 419 F.3d 1342, 1355 (Fed. Cir. 2007) (affirming the trial court's decision to strike the expert opinion that contained conclusory testimony, unsupported and unreasonable inferences).

frames are fixed length; are only transmitted to two-way water and gas meters and are not received from those meters; and are not multiplexed or synchronously related. The only way a jury could find otherwise is to adopt EON's unsupported speculation, improper inferences, self-serving assumptions, and flawed methodology that, not surprisingly, coincide with what EON must show for infringement. This is not a proper basis for a jury verdict,[15] or to assert infringement in the first place.[16] These defects explain why *after* Sensus filed this summary judgment motion, and long *after* EON served its final infringement contentions and Dr. Bims' opening report, EON asked Dr. Bims to supplement his opening report to present an untimely buffet of new infringement theories for "digital data messages of variable length."

### C. EON'S NEW INFRINGEMENT THEORIES ARE UNTIMELY AND CANNOT PREVENT SUMMARY JUDGMENT

Dr. Bims' new infringement theories regarding other alleged "digital data messages of variable length" in the accused FlexNet systems should be excluded for the reasons stated in Sensus' pending motion to strike.[17] Tellingly, EON does not cite Dr. Bims opening report ***at all*** in support of any of its new theories, realizing those new theories are not contained in that report. Instead, EON's response relies exclusively on the Bims Declaration submitted with that response,[18] which is an abbreviated facsimile of the Bims supplemental report and should be stricken for the same reasons.

---

[15] *Anthony v. Chevron USA, Inc.*, 284 F.3d 578, 583 (5th Cir. 2002) ("In order to survive a Rule 50 motion and present a question for the jury, the party opposing the motion must at least establish a conflict in substantial evidence on each essential element of their claim. In other words, the evidence must be sufficient so that a jury will not ultimately rest its verdict on mere speculation and conjecture.") (internal citation omitted); *Nichols Constr. Corp. v. Cessna Aircraft Co.*, 808 F.2d 340, 346–47 (5th Cir. 1985) ("Because of the requirement that the verdict be supported by substantial evidence, a verdict may not rest on speculation and conjecture. The jury's freedom to draw inferences from the evidence does not extend so far as to allow a wholly unreasonable inference or one which amounts to mere speculation and conjecture.") (internal citations and quotations omitted); *GTX Corp. v. Kofax Image Prods. Inc.*, 571 F. Supp. 2d 742, 745 (E.D. Tex. 2008) ("Mere conclusory allegations, unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence.").

[16] *See generally* Def. Sensus USA Inc.'s Mot. Strike the Opening Report of EON's Expert Dr. Bims, ECF No. 297 (discussing improper methodology and lack of reliable data for Dr. Bims' opening report and infringement opinions, grounded on unsupported inference, speculation, and assumption).

[17] *See generally* Sensus' Mot. Strike Dr. Bims Supp. Report, ECF No. 292; *see also* Sensus' Reply in Support of Its Motion for Partial Summary Judgment of Noninfringement for the Accused FlexNet Electric and One-way Water and Gas Systems at Section I.C.

[18] Ex. QQ to EON Resp., ECF No. 307.

Suffice it to say, there is no guarantee that any of those new theories will be any more successful in establishing infringement, and avoiding summary judgment, than EON's failed NA2W theory that has been cast aside. Indeed, in the Bims Declaration, although Dr. Bims purports to identify "many infringing message types" other than NA2W frames, Dr. Bims *still* does not present any opinion or analysis purporting to show that these other message types are transmitted to *and received from* Sensus meters; are *multiplexed*; or are *synchronously related*— all of which are required limitations as already discussed.[19] In other words, Dr. Bims has *still* not performed the necessary analysis or presented any opinions from which a reasonable jury could find infringement. The Bims Declaration makes *no mention* of group commands, multiplexing, or synchronous relation of the "many infringing message types" *at all*.[20] This is readily apparent from Section IV.D of EON's response, discussing these limitations, which *never cites* the Bims Declaration (because it does not opine on this issue) or, for that matter, Dr. Bims' opening report (because it likewise does not opine on this issue or support Dr. Bims' new infringement theories). EON therefore presents pure attorney argument based on Sensus' documents to argue these features are satisfied—features and argument that are well beyond the understanding of the jury and require expert opinion for a finding of infringement.[21]

Attorney argument cannot substitute for expert opinion needed to prove infringement,[22] nor is attorney argument "evidence" that creates a genuine issue of material fact.[23] Thus, even

---

[19] Sensus Opening Mot. 2–3, ECF No. 277.

[20] *See* Bims Decl. (Ex. QQ to EON Resp., ECF No. 307) at ¶¶ 1–18.

[21] *See* n.22, *infra*.

[22] *See, e.g.*, *Invitrogen Corp. v. Clontech Labs., Inc.*, 429 F.3d 1052, 1068 (Fed. Cir. 2005) ("Unsubstantiated attorney argument regarding the meaning of technical evidence is no substitute for competent, substantiated expert testimony. It does not, and cannot, support Clontech's burden on summary judgment."); *Centricut, LLC v. Esab Grp., Inc.*, 390 F.3d 1361, 1370 (Fed. Cir. 2004) (explaining that expert testimony is essential in patent cases involving complex technology, and finding that "in a case involving complex technology, where the accused infringer offers expert testimony negating infringement, the patentee cannot satisfy its burden of proof by relying only on testimony from those who are admittedly not expert in the field").

[23] *See, e.g.*, *AquaTex Indus., Inc. v. Techniche Solutions*, 479 F.3d 1320, 1329 (Fed. Cir. 2007) ("[I]n opposing summary judgment, AquaTex only provided lawyer argument and generalized testimony about the accused product. It has failed to demonstrate a genuine issue of material fact that would prevent the grant of summary judgment."); *GTX Corp. v. Kofax Image Prods. Inc.*, 571 F. Supp. 2d 742, 747, 751 (E.D. Tex. 2008) (finding that "GTX cannot survive summary judgment by offering unsupported attorney argument and conclusive expert statements" and thus has not shown a genuine issue of material fact regarding literal infringement).

without delving into the substance of EON's new infringement theories, EON's response on its face fails to proffer competent summary judgment evidence that could defeat this summary judgment motion.[24] And because EON's new infringement theories and the Bims Declaration are untimely and were fabricated *after* Sensus filed this summary judgment motion, with the specific intent to frustrate that motion, they should be stricken and cannot in any event supply a genuine issue of material fact that prevents summary judgment.

## II. CONCLUSION

EON does not, and cannot, dispute that NA2W frames are fixed length. Further, EON has not identified any evidence that these frames are multiplexed, synchronously related, or received from Sensus two-way water and gas meters. EON's untimely new infringement theories cannot and do not supply a genuine issue of material fact and, in any event, Dr. Bims' declaration submitted with EON's response still fails to present sufficient opinions and analysis from which a reasonable jury could find infringement. Sensus therefore respectfully requests that the Court grant partial summary judgment that none of the accused FlexNet systems infringe '101 patent claims 1 and 9 and '546 patent claims 1−3, 5, 7, 8, 12, and 13.

---

[24] At deposition, Dr. Bims admitted that he must "tie together" the parts of the claim limitations, but he has not done so even in his declaration that EON presents in response to Sensus' summary judgment motion. Bims Dep. 174:7–176:11 (Ex. 1).

- 8 -

January 10, 2011

Respectfully submitted,

/s/ Hilda Galvan
Hilda C. Galvan
Lead Attorney
Texas State Bar No. 00787512
Email: hcgalvan@jonesday.com
Keith B. Davis
Texas State Bar No. 24037895
Email: kbdavis@jonesday.com
Mark J. Ziegelbein
Texas State Bar No. 24029923
Email: mjziegelbein@jonesday.com
Lon Outland
Texas State Bar No. 24065857
Email: loutland@jonesday.com
JONES DAY
2727 North Harwood Street
Dallas, TX 75201-1515
Telephone: (214) 220-3939
Facsimile: (214) 969-5100

Otis Carroll
State Bar No. 03895700
Deborah Race
State Bar No. 16448700
Ireland, Carroll & Kelley, PC
6101 S. Broadway, Suite 500
Tyler, Texas 75703
Tel: (903) 561-1600
Fax: (903) 581-1071
Email: Fedserv@icklaw.com

ATTORNEYS FOR SENSUS USA INC.

- 9 -

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was filed via CM/ECF and was served upon all counsel of record via CM/ECF on January 10, 2011.

/s/ Hilda Galvan

## CERTIFICATE OF AUTHORITY TO FILE UNDER SEAL

I hereby certify that pursuant to Local Rule CV-5(a)(7) and Paragraph 25 of the Protective Order [Dkt. No. 202], as amended, the Court has granted authorization to seal documents in this case.

/s/ Hilda Galvan

DLI-6337856v4